352 S.E.2d 158

**STATE of West Virginia**

v.

**Marvin James REEDY. (Two Cases)**

**Nos. 17019 and 17020.**

Supreme Court of Appeals of West Virginia.

Decided Dec. 19, 1986.

---

Robert Reed Sowa, Sutton, Wayne King, Clay, for appellant.

Mary Rich Maloy, Asst. Atty. Gen., Charleston, Richard Facemire, Prosecuting Atty., Clay, for appellee.

McGRAW, Justice:

This case involves two appeals by Marvin James Reedy from his conviction for daytime burglary under West Virginia Code § 61-3-11 (1984 Replacement Vol.) and his subsequent conviction and life sentence as a recidivist under West Virginia Code § 61-11-18 (1984 Replacement Vol.). The appellant makes numerous assignments of error regarding both the daytime burglary and recidivist trials. He also contends that he was denied effective assistance of counsel in the burglary trial because his court appointed trial counsel was a relative and friend of the burglary victim, and because this relationship was not revealed to the appellant prior to the burglary trial.[1]

We agree with the appellant that the potential conflict of interest in the family relationship, together with the lack of timely disclosure to the appellant, constituted a violation of the appellant's right to effective assistance of counsel. Therefore, we reverse the appellant's convictions [2] and

---

1. The appellee does not deny that appellant's trial counsel was both a friend and relative of the burglary victim, who was the prosecuting witness in the first trial, that this relationship was not revealed prior to that trial, nor that the circuit court appointed new counsel for the recidivist trial after the relationship was revealed.

2. The life sentence imposed upon the appellant under our habitual criminal statute is null and void, because the invalid judgment of conviction for daytime burglary "cannot serve as a founda-

remand this matter to the Circuit Court of Clay County for a new trial on the daytime burglary indictment.

## I.

■ "The right of one accused of a crime to the assistance of counsel is a fundamental right, essential to a fair trial. . . ." Syl. Pt. 1, *State ex rel. May v. Boles,* 149 W.Va. 155, 139 S.E.2d 177 (1964). We have held that, under both the West Virginia Constitution[3] and the United States Constitution,[4] the right of a criminal defendant to assistance of counsel is a right to effective assistance of counsel. *State ex rel. Favors v. Tucker,* 143 W.Va. 130, 140, 100 S.E.2d 411, 416 (1957), *cert. denied,* 357 U.S. 908, 78 S.Ct. 1153, 2 L.Ed.2d 1158 (1958); *see also State ex rel. Levitt v. Bordenkircher,* 176 W.Va. 162, 342 S.E.2d 127, 133 (1986). A trial court is without jurisdiction to enter a valid judgment of conviction against a defendant in the absence of effective assistance of counsel. Syl. Pt. 25, *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974).

Because the effect of a family relationship on a defendant's right to effective assistance of counsel is an issue of first impression in this Court, we find it benefi-

cial to first review our standards in other contexts where the effectiveness of counsel has been questioned.

■ We are often confronted with claims of ineffectiveness of counsel based on negligence in the preparation for or the actual conduct of a trial. In those cases, the burden is on the defendant to prove the ineffectiveness of counsel and resulting prejudice by a preponderance of the evidence. Syl. Pt. 3, *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445. In determining whether the defendant was prejudiced by his counsel's performance, we presume that trial counsel will seek the best result for his client, and we measure his performance by a reasonableness standard.[5]

■ Where ineffectiveness of counsel is asserted by a defendant because of a conflict of interest, different standards are applied in ascertaining counsel's effectiveness. In cases involving joint representation by counsel of two or more defendants, our rules for determining the existence of conflict and prejudice to the appellant are set forth in *State ex rel. Postelwaite v. Bechtold,* 158 W.Va. 479, 212 S.E.2d 69 (1975), *cert. denied,* 424 U.S. 909, 96 S.Ct. 1103, 47 L.Ed.2d 312 (1976). In Syllabus

---

tion for the application of the habitual offender statute." *Housden v. Leverette,* 161 W.Va. 324, 241 S.E.2d 810 (1978) (citing *State ex rel. Johnson v. Boles,* 151 W.Va. 224, 151 S.E.2d 213 (1966) and *State ex rel. Widmeyer v. Boles,* 150 W.Va. 109, 144 S.E.2d 322 (1965)).

3. Article III, Section 14 of the West Virginia Constitution reads, in pertinent part, as follows: "In all such trials, the accused shall be fully and plainly informed of the character and cause of the accusation, and be confronted with the witness against him, and shall have the assistance of counsel. . . ."

4. The Sixth Amendment to the United States Constitution reads as follows:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for

obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

5. This rule is stated in Syllabus Point 19 of *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445, as follows:

In the determination of a claim that an accused was prejudiced by ineffective assistance of counsel violative of Article III, Section 14 of the West Virginia Constitution and the Sixth Amendment to the United States Constitution, courts should measure and compare the questioned counsel's performance by whether he exhibited the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law, except that proved counsel error which does not affect the outcome of the case, will be regarded as harmless error.

A "reasonably effective assistance" standard has also been adopted by the United States Supreme Court. In *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674, 693 (1984), the Supreme Court said: "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."

Point 3 of *Postelwaite,* we ruled that joint representation is not *per se* violative of a defendant's right to receive effective assistance, and that actual conflict must be shown by the defendant. Once a conflict is found, however, prejudice and ineffectiveness of counsel are presumed. *Id.* 158 W.Va. at 491, 212 S.E.2d at 76.[6] If conflict is not shown, the Court will apply a reasonableness standard to determine whether the counsel's performance effectively assisted each of his joint clients. *Id.* In a case where conflict was alleged because of a friendship between the court appointed counsel and the prosecuting attorney, we found no showing was made that the friendship affected the court appointed counsel's competence or presented any likelihood of prejudice to the appellant's defense, and held that substitution of counsel was not warranted. *State v. Sheppard,* 172 W.Va. 656, 310 S.E.2d 173, 185 (1983).

A family relationship between defense counsel and the crime victim could lessen the likelihood that the defendant will receive effective assistance of counsel. Standard 4–3.5(a) of the American Bar Association Standards for Criminal Justice provides that "[a]t the earliest feasible opportunity defense counsel should disclose to the defendant any interest in or connection with the case or any other matter that might be relevant to the defendant's selection of a lawyer to represent him or her." The significant inquiry in the instant case is not whether actual conflict occurred because of the family relationship, but whether the potential for conflict was revealed to the appellant in a timely manner.

■■■ Disclosure of a potential conflict is mandated in order to give the defendant an opportunity to decide whether to retain other counsel or demand different court appointed counsel. An indigent criminal defendant may demand different counsel for good cause, such as the existence of a conflict of interest, Syl. Pt. 5, *Watson v.*

*Black,* 161 W.Va. 46, 239 S.E.2d 664 (1977), or; if the potential conflict is disclosed in a timely fashion, he may elect to waive his rights and keep the court appointed counsel, *see, e.g., Holloway v. Arkansas,* 435 U.S. 475, 483, 98 S.Ct. 1173, 1178, 55 L.Ed.2d 426, 433 (1978); *Glasser v. United States,* 315 U.S. 60, 70, 62 S.Ct. 457, 464, 86 L.Ed. 680, 699 (1942); *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). If disclosure is not made, the defendant is denied the opportunity to make an informed and intelligent decision concerning his defense.

■■ When confronted with a defense counsel's failure to disclose a close relationship with the prosecutor, a California court held as follows:

> Accordingly, counsel involved in a potential conflict situation such as that disclosed by this record may not proceed with the defense without first explaining fully to the accused the nature of his relationship with opposing counsel and affording the accused the opportunity, if he *so desires, to secure counsel unencumbered by potential divided loyalties.*
>
> Given the nature of the relationship shown here, the absence of disclosure inevitably fuels informed speculation as to the existence of a disabling conflict. Defendant is then left with no recourse but to impugn the loyalty and adequacy of his appointed counsel. Since the situation created by counsel's lack of disclosure defies its quantification, actual prejudice need not be shown by defendant as a condition to relief. A potential if not actual conflict has been demonstrated and thus the appearance, at least, of impropriety.

*People v. Jackson,* 167 Cal.App.3d 829, 833, 213 Cal.Rptr. 521, 523 (1985) (citation omitted). The same principles apply here. Nondisclosure of the family relationship in this case has denied the defendant his right

---

**6.** The *Postelwaite* standard applies in reviewing a conviction of a criminal defendant on appeal. Pursuant to Rule 44(c) of the West Virginia Rules of Criminal Procedure, a different standard must be applied by the trial court in initially determining whether joint representation is proper. While a trial court must presume that a conflict of interest will arise unless good cause is shown to the contrary, we are reluctant to second guess the judgment of a trial court in this matter and will apply the *Postelwaite* standard on review.

to effective assistance of counsel.[7] Accordingly, we reverse the appellant's daytime burglary and recidivist convictions.

## II.

Because the defendant must be given a new trial, a brief review of the facts and assignments of error in the burglary trial is appropriate.

On the morning of July 30, 1982, at approximately 7:30 a.m., two state policemen from the Clay County detachment of the West Virginia Department of Public Safety, acting on a tip from an informant, positioned themselves inside a doctor's residence at Big Otter, West Virginia, which the informant said had been targeted for burglary. Locking all the doors and windows, the doctor and his wife left the house at approximately 8:15 a.m.

Minutes later a man rang the doorbell several times before moving around the corner of the house. One of the officers then moved to the edge of the family room, so he could see down the hallway leading to the bedrooms. Shortly after the doorbell stopped ringing, the officers heard the sounds of a window being pried open and of wood breaking. The officer standing at the edge of the family room next heard shuffling noises in the master bedroom and a person walking down the hallway. The officer stepped out from his hiding place, pointed his shotgun at the man, and ordered him to halt. The man instead turned and ran back down the hallway. Because the man was armed with a gun, the officer proceeded cautiously in pursuit. When the officer rounded the corner to a point where he could see clearly down the hallway, he saw another man running toward the bedroom door. The officer cautiously followed the men into the master bedroom, where he found an open window through which he exited.[8] He then ran around the end of the house where he saw two men being held by the other officer.[9]

The appellant was identified at trial as one of the men seen by the officer in the hallway of the doctor's residence, and as one of the men taken into custody outside of the doctor's residence. The other man, who was tried separately from the appellant, was identified as Larry Mabry. A third man, Harry Allen, was also indicted with the appellant and Larry Mabry.

## III.

The appellant's daytime burglary trial commenced on November 29, 1982, and the jury returned a verdict of guilty of daytime burglary on December 2, 1982. Several assignments of errors are made by the appellant regarding the burglary trial.

The appellant's first assignment of error concerns the trial court's decision to allow the introduction into evidence of a gun and ammunition clip which had been in Mabry's possession. The appellant argues that he was not in possession of a firearm, and that the introduction of Mabry's gun and ammunition clip into evidence was made by the prosecution in an effort to inflame the jury against the appellant. The appellant further contends that because his trial and Mabry's had previously been severed, the trial court committed error by allowing the introduction of evidence which should have only been used in the case against Mabry. The trial court concluded that the jury was entitled to consider as evidence all items seized by the officers, including the gun and clip, a pair of gloves, and a pry bar recovered at the scene, because all of those

---

**7.** Because the issue resolved today is a novel one, we do not believe that the failure of appellant's court-appointed counsel to reveal his relationship to the burglary victim constitutes an ethical violation. In situations of conflict arising after today, however, disclosure is mandated in accordance with this opinion.

**8.** A subsequent examination by the state police revealed that the top of the window was broken and that the window latch was also broken. Additionally, pry marks were found on the bottom part of the window and on the window's frame.

**9.** Upon hearing the suspects running down the hallway after the order to halt had been given by his partner, the other officer unlocked the front door and ran outside toward the corner of the house. The officer testified that the two suspects then came running around the corner, and that he pointed his shotgun at them and ordered them to lie on the ground.

items were relevant to such issues as credibility, intent to burglarize, and whether the appellant and Mabry jointly participated in the burglary.

■ "The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." Syl. Pt. 10, *State v. Huffman*, 141 W.Va. 55, 87 S.E.2d 541 (1955). In *State v. Cook*, 175 W.Va. 185, 332 S.E.2d 147 (1985), we allowed the introduction of evidence found in the possession of the defendant's accomplice because the defendant and accomplice were together on the night of the victim's death. As in *Cook*, the evidence clearly demonstrates that the appellant and Mabry were together at the burglary scene on July 30, 1982. The appellant and Mabry were seen inside the house and were apprehended together outside of the house. Therefore, we do not believe the trial court abused its discretion in allowing the gun and clip to be introduced as evidence against the appellant.

The appellant's second assignment of error attacks the admissibility of testimony given by one of the officers that the appellant requested to have a pair of gloves removed from his hands. The appellant argues the trial court erred in allowing the testimony prior to holding an *in camera* hearing on its admissibility. The trial court had no reason to anticipate the need for such a hearing, and the defense had not requested one, since the prosecution itself did not mean to elicit the testimony. Since, however, the trial court is now on notice of the possibility of this testimony, on remand it will have an opportunity to hold a prior *in camera* hearing.

The appellant's third assignment of error is that the trial court erroneously ruled concerning the extent to which the appellant's coindictee, Harry Allen, would waive his fifth amendment privilege against self-incrimination if he testified as a witness for the appellant. The appellant also contends that the trial court's ruling denied the appellant his sixth amendment right to compulsory process for obtaining witnesses in

his favor. We disagree with both of these contentions.

At the appellant's request, an *in camera* hearing was held to determine the extent to which Allen would waive his constitutional privilege against self-incrimination by testifying on direct examination. The appellant contends that the trial court improperly ruled that if Harry Allen testified, Allen would waive his right to invoke the fifth amendment regarding testimony not directly related to the questions asked on direct examination. This contention, however, is inconsistent with the record. The trial court ruled that Allen would waive his privilege against self-incrimination concerning those cross-examination questions reasonably related to and within the scope of the direct examination.

We have previously acknowledged the sensitive nature of the competing interests involved in circumstances like the one which confronted the appellant, the potential witness, the prosecutor, and the trial court. In *State v. Cook*, 175 W.Va. 185, 332 S.E.2d 147, we ruled that the trial court had a special obligation to seek an accommodation.

We acknowledge the sensitive nature of the competing interests involved: the defendant's interest in presenting his or her own witnesses to establish a defense, the witness' interest in exercising his or her privilege against self-incrimination, and the prosecution's interest in securing effective cross-examination. Given the critical nature of each of these interests, however, the trial court was under a special obligation to seek an accommodation. In the instant proceeding, an in camera hearing would have been appropriate to determine the precise extent to which Price would have sought to invoke his privilege against self-incrimination. Perhaps, after he discovered that he would be directed to answer certain questions despite his invocation of the fifth amendment, he would have withdrawn his offer to testify. On the other hand, the prosecution might have discovered that he was willing to submit to cross-examination as long as the answers

sought did not tend to further incrimi-- nate him.

*Id.*, 175 W.Va. at 196–97, 332 S.E.2d at 159.

 In the proceeding now under review, an *in camera* hearing was held by the trial court, and Allen was advised as to the parameters of appropriate cross-examination.[10] The appellant thereafter advised the trial court that Allen would not be called as a witness. Based on the foregoing, we cannot say that the trial court erred in its actions.

 We also find no merit in the appellant's contention that the trial court's ruling denied the appellant his constitutionally guaranteed right to have compulsory process for obtaining a witness in his favor.[11] The trial court's ruling did not prohibit the appellant from calling Allen as a witness. To the contrary, this decision was made by the appellant after consultation with his counsel, even though the appellant could have obtained a subpoena to compel Allen's appearance. The trial court was careful to note that it made no ruling as to whether Allen could or could not testify, since it had no authority to rule who the appellant could call as a witness. As we held in Syllabus Point 2 of *State v. Harman*, 165 W.Va. 494, 270 S.E.2d 146 (1980): "The constitutional right against self-incrimination does not extend to prevent the physical appearance of a person at trial." We went on to state in *Harman* the general rule that one not accused must submit to inquiry. *Id.* 169 W.Va. at 504, 270 S.E.2d at 153. The appellant, however, made a strategic decision not to avail himself of his right to seek compulsory process; he can-

not now argue that the trial court's ruling denied that right.

The appellant's fourth assignment of error is that the trial court erred in failing to order the State to disclose the identity of the confidential informant. We disagree. After an *in camera* hearing on the matter, the trial court overruled the appellant's disclosure motion, in part, because the informant in this case did not have direct knowledge of what took place at the time of the crime. The trial court, therefore, ruled that the informant's confidentiality should be maintained.

In reviewing the trial court's resolution of this issue, we are governed by Syllabus Point 3 of *State v. Tamez*, 169 W.Va. 382, 290 S.E.2d 14 (1982):

> When the State in a criminal action refuses to disclose to the defendant the identity of an informant, the trial court upon motion shall conduct an *in camera* inspection of written statements submitted by the State as to why discovery by the defendant of the identity of the informant should be restricted or not permitted.... In ruling upon the issue of disclosure of the identity of an informant, the trial court shall balance the need of the State for nondisclosure in the promotion of law enforcement with the consequences of nondisclosure upon the defendant's ability to receive a fair trial. The resolution of the disclosure issue shall rest within the sound discretion of the trial court, and only an abuse of discretion will result in reversal. *W.Va. R.Crim.P.* 16(d)(1).

 The record supports the trial court's finding that the informant had no

10. The trial court's ruling is consistent with our holding in Syllabus Point 4 of *State v. Richey*, 171 W.Va. 342, 298 S.E.2d 879 (1982), which sets forth the general rules with respect to the scope of cross-examination:

> Several basic rules exist as to cross-examination of a witness. The first is that the scope of cross-examination is coextensive with, and limited by, the material evidence given on direct examination. The second is that a witness may also be cross-examined about matters affecting his credibility. The term "credibility" includes the interest and bias of the witness, inconsistent statements made by the witness and to a certain extent the witness'

character. The third rule is that the trial judge has discretion as to the extent of cross-examination.

11. In Syllabus Point 3 of *State v. Harman*, 165 W.Va. 494, 270 S.E.2d 146 (1980), we held:

> Under the Sixth Amendment to the United States Constitution and Article III, Section 14 of the West Virginia Constitution, the defendant has a constitutional right to have compulsory process for obtaining witnesses in his favor, and disallowance of a subpoena to bring a material witness before the jury constitutes reversible error.

direct knowledge of the actual commission of the crime. The informant was not a participant in the burglary, nor was the informant a material witness to it. *See* Syl. Pt. 5, *State v. Walls,* 170 W.Va. 419, 294 S.E.2d 272 (1982); *see also* Syl. Pt. 2, *State v. Mansfield,* 175 W.Va. 397, 332 S.E.2d 862 (1985). Furthermore, there is no showing that the appellant's defense was jeopardized by nondisclosure. *See* Syl. Pt. 1, *State v. Haverty,* 165 W.Va. 164, 267 S.E.2d 727 (1980); *see also* Syl. Pt. 1, *State v. Tamez,* 169 W.Va. 382, 290 S.E.2d 14; Syl. Pt. 1, *State v. Mansfield,* 175 W.Va. 397, 332 S.E.2d 862. Therefore, we hold that the trial court did not abuse its discretion by overruling the appellant's disclosure motion.

The appellant's remaining assignments of error concerning the burglary trial allege three instances of instructional error by the trial court. First, the appellant protests the trial court's instruction to the jury that, if the jury was convinced beyond a reasonable doubt that the appellant was present and aided and abetted Larry Mabry in burglarizing the doctor's residence, they could find the appellant guilty as principal in the second degree. We find that the trial court committed no error by giving the principal in the second degree instruction.

West Virginia Code § 61–11–6 (1984 Replacement Vol.) provides that in the case of a felony, a principal in the second degree is punishable as if he were the principal in the first degree. We have defined a principal in the second degree to be a person who is present, aiding and abetting the crime. *See, e.g.,* Syl. Pt. 3, *State v. Franklin,* 139 W.Va. 43, 79 S.E.2d 692 (1953). In *State v. Petry,* 166 W.Va. 153, 273 S.E.2d 346 (1980), we held that "a general indictment as a principal in the first degree shall be sufficient to sustain a conviction regardless of whether the evidence demonstrates that the defendant was a principal, aider and abettor, or accessory before the fact." *Id.,* 166 W.Va. at 162, 273 S.E.2d at 352. Prior to *Petry,* a distinction between principals in the first degree and aiders and abettors was observed.

*See, e.g.,* Syl. Pt. 2, *State v. Jones,* 161 W.Va. 55, 239 S.E.2d 763 (1977), *overruled, State v. Petry,* 166 W.Va. 153, 273 S.E.2d 346. Pursuant to this distinction, trial courts could not give instructions on aiding and abetting, unless aiding and abetting was charged in the indictment. *See, e.g., State v. Fitch,* 164 W.Va. 337, 342, 263 S.E.2d 889, 892 (1980), *overruled in part, State v. Petry,* 166 W.Va. 153, 273 S.E.2d 346. Our holding in *Petry* explicitly abolished the distinctions between principals in the first degree and aiders and abettors at the indictment stage. Therefore, the prohibition against aiding and abetting instructions in instances where the indictment only charges the defendant as a principal in the first degree has also been abolished.

The appellant contends that the jury inferred from the instruction that the appellant, by his mere presence, was guilty of a crime. In fact, the instruction given by the trial court prohibits the jury from making such an inference. The instruction requires the jury to be convinced beyond a reasonable doubt that the appellant was present *and* aided and abetted Larry Mabry in the breaking and entering. The appellant further argues there was no showing that the defendant participated as a principal in the burglary. This contention is without foundation. "[A]ll that it is necessary for a principal in the second degree to be doing is to be present aiding and abetting in the commission of the crime. He does not have to commit the crime itself...." *State v. West,* 153 W.Va. 325, 335, 168 S.E.2d 716, 722 (1969).

In this case, the trial court concluded from the evidence adduced at trial that the jury could find the appellant guilty of daytime burglary as a principal in the first degree, guilty as aiding and abetting Larry Mabry in the daytime burglary, or not guilty of daytime burglary. We agree with the trial court. Therefore, we find that the aiding and abetting instruction was proper.

Second, the appellant protests the trial court's refusal to instruct regarding the lesser included offense of entering without breaking a dwelling house. *See* W.Va. Code § 61–3–11(b).

The trial court was unable to ascertain evidence of entering without breaking, because none was presented by either the State or the appellant. The State's evidence of breaking and entering was not disputed by the appellant. Instead, the appellant's only explanation for being at the doctor's residence was for the purpose of seeking work on the doctor's farm. The appellant admitted ringing the doorbell, but denied entering the dwelling house.

Based on the foregoing, we find that the trial court properly followed our holding in *State v. Neider*, 170 W.Va. 662, 295 S.E.2d 902 (1982), which requires "a determination by the trial court if there is evidence which would tend to prove such lesser included offense." *Id.*, 170 W.Va. at 665, 295 S.E.2d at 905. Here, there was no evidence offered which would tend to prove entering without breaking, and there is no factual conflict as to the element of breaking. "Where there is no evidentiary dispute or insufficiency on the elements of the greater offense which are different from the elements of the lesser included offense, then the defendant is not entitled to a lesser included offense instruction." Syl. Pt. 2, *State v. Neider*, 170 W.Va. 662, 295 S.E.2d 902; *see also State v. Thompson*, 176 W.Va. 300, 342 S.E.2d 268, 276 (1986). The appellant was not entitled by any evidence presented at trial to a lesser included offense instruction.

Third, the appellant complains that the trial court erred by refusing certain instructions tendered by the appellant. We agree with the trial court that the tendered instructions were either repetitious or not supported by the evidence. "It is not reversible error to refuse to give instructions offered by a party that are adequately covered by other instructions given by the court." Syl. Pt. 20, *State v. Hamric*, 151 W.Va. 1, 151 S.E.2d 252 (1966); *see also* Syl. Pt. 3, *State v. Evans*, 172 W.Va. 810, 310 S.E.2d 877 (1983); Syl. Pt. 6, *State v. Thompson*, 176 W.Va. 300, 342 S.E.2d 268.

The appellant's final assignment of error concerning the burglary trial is that the trial court erred by overruling appellant's motion for a directed verdict of acquittal.

In Syllabus Point 1 of *State v. Fischer*, 158 W.Va. 72, 211 S.E.2d 666 (1974), this Court held that:

Upon motion to direct a verdict for the defendant, the evidence is to be viewed in light most favorable to prosecution. It is not necessary in appraising its sufficiency that the trial court or reviewing court be convinced beyond a reasonable doubt of the guilt of the defendant; the question is whether there is substantial evidence upon which a jury might justifiably find the defendant guilty beyond a reasonable doubt.

*See also* Syl. Pt. 16, *State v. Cook*, 175 W.Va. 185, 332 S.E.2d 147.

We find that sufficient evidence existed which could have resulted in a justifiable finding of guilt beyond a reasonable doubt; therefore, the trial court's refusal to direct a verdict of acquittal was not error.

### IV.

The appellant makes two pertinent assignments of error regarding the recidivist trial. Although the recidivist conviction and sentence are void because of our reversal of the daytime burglary conviction, the assignments of error made by the appellant merit discussion in case a second recidivist trial proves necessary.

First, the appellant challenges the introduction of prison photographs of the appellant which prominently showed prison numbers. The prison photographs were presented and introduced as evidence of the identity of the appellant as the person charged with two prior felony convictions. Our holding in *State v. Lawson*, 125 W.Va. 1, 22 S.E.2d 643 (1942), is dispositive of this issue.

Where it is necessary to establish the identity of the accused as the person charged with former convictions under the Habitual Criminal Law, Code, 61–11–19, as amended, and the same is established by formal court record, personal identification, and by comparison of his fingerprints with those appearing on prison records, the introduction in evi-

dence, over objection, of prison photographs of the accused prominently showing a prison number, overemphasizes the former convictions, is prejudicial and constitutes reversible error.

*Id.* at Syl. Pt. 1, *State v. Lawson,* 125 W.Va. 1, 22 S.E.2d 643. As in *Lawson,* other identification methods were available to the prosecution in the case at bar.

Second, an assignment. of error is made because the appellant was seen in prison attire prior to *voir dire* by the jurors later impanelled for the recidivist. proceeding. The appellant admits that he subsequently refused the trial court's offers to allow the appellant to change clothes for the jury selection and the recidivist proceeding, because the jury had already seen him in prison attire. The appellant contends that his appearance before the jury in. prison attire allowed the jury to witness evidence which the State would have otherwise had to prove by other means.

 "[W]e have consistently viewed the West Virginia recidivist statute in a restrictive fashion in order to mitigate its harshness." *Wanstreet v. Bordenkircher,* 166 W.Va. 523, 276 S.E.2d 205, 209 (1981). Therefore, we believe the well settled rule that a criminal defendant may not be compelled to wear identifiable prison attire at trial extends to a recidivist proceeding. *Estelle v. Williams,* 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976); *see also* Syl. Pt. 2, *State ex rel. McMannis v. Mohn,* 163 W.Va. 129, 254 S.E.2d 805 (1979), *cert. denied,* 464 U.S. 831, 104 S.Ct. 110, 78 L.Ed.2d 112 (1983).

The constitutional right established in *Estelle* and *Mohn* is based on the presumption of innocence. Substantial due process protection is afforded in a recidivist proceeding, and, therefore, "the State must prove beyond a reasonable doubt that the subsequent felonies, ·for recidivist purposes, were committed only after the conviction and sentencing for. each prior felo-

ny." *Wanstreet,* 166 W.Va. at 527, 276 S.E.2d at 208; *see also* Syl., *State· v. McMannis,* 161 W.Va. 437, 242 S.E.2d 571 (1978). In such a proceeding, the presumption of innocence would be abridged if a defendant were compelled to appear before the jury in identifiable prison attire. We realize that a jury in a recidivist proceeding will learn from other evidence that the appellant has in fact been convicted of the most recent felony. We do not believe, however, that this diminishes the prejudice of requiring a defendant to appear at a recidivist proceeding in identifiable prison attire. *But cf. Mohn,* 163 W.Va. at 134, 254 S.E.2d at 808.

## V.

The appellant's final assignment of error concerns the fact that the State did not provide the appellant with a transcript of his daytime burglary trial until twenty-six months after his conviction. Furthermore, the appellant complains because the transcript was incomplete when it was received. We, too, find these facts disturbing. Our strong feelings concerning dilatory court reporters were stated in *Mayle v. Ferguson,* 174 W.Va. 430, 327 S.E.2d 409, 413 (1985):

> The law requires diligence on the part of both judges and attorneys. The law similarly requires diligence on the part of court reporters. Court reporters cannot be permitted, after the judge and the lawyers have diligently performed their duties, to constipate the process by neglecting their duties. Dilatory court reporters are subject not only to compulsion of performance of their official duties by writ of mandamus, but also to administrative sanctions.

We emphasize once again that court reporters must not shirk their responsibility as officers of this Court.[12]

---

**12.** In Syllabus Point 3 of *Mayle v. Ferguson,* 174 W.Va. 430, 327 S.E.2d 409 (1985), we held:

Although subject to the direction and supervision of the circuit judges to whom they are assigned, court reporters, as employees of the Supreme Court of Appeals, whose primary functions consist of recording, transcribing, and certifying records of proceedings for purposes of appellate review, are subject to the ultimate regulation, control, and discipline of the Supreme Court of Appeals.

### VI.

Based on the foregoing, we reverse the appellant's daytime burglary and recidivist convictions, and we remand this matter to the Circuit Court of Clay County for a new trial consistent with this opinion.

Reversed and remanded.