No. 20-0744 – *State of West Virginia v. A.B.*

WOOTON, Justice, dissenting, joined by Chief Justice Hutchison:

The horrific facts of the instant case make it difficult to look beyond the tragedy of baby G.B.'s death and the seeming lack of any defense on the part of the defendant/petitioner, A.B., who was G.B.'s mother. Nonetheless, our overarching responsibility in any criminal case is to determine whether the petitioner was afforded his or her constitutional right to a fair trial, a right grounded in the due process protections of article III, section 14 of the West Virginia Constitution. *See State v. Thompson*, 240 W. Va. 406, 411, 813 S.E.2d 59, 64 (2018) ("A fair trial in a fair tribunal is a basic requirement of due process. . . . This is true, regardless of the heinousness of the crime charged, the apparent guilt of the offender or the station in life which he occupies.").[1] In the instant case, it is an inescapable conclusion that the petitioner did not receive a fair trial because she was represented by counsel with an actual conflict of interest. Whether or not that conflict resulted in ineffective assistance of counsel – and after reviewing the trial transcript in this case one could easily make that argument – is immaterial, as prejudice should be presumed

---

[1] In *Thompson*, the Court relied upon the United States Supreme Court's opinion in *Turner v. Louisiana,* 379 U.S. 466 (1965), for this lodestar proposition:

> "'A fair trial in a fair tribunal is a basic requirement of due process.' . . . This is true, regardless of the heinousness of the crime charged, the apparent guilt of the offender or the station in life which he occupies. It was so written into our law as early as 1807 by Chief Justice Marshall in 1 Burr's Trial 416 * * *."

*Turner,* 379 U.S. at 472 (citations omitted).

1

from the fact of the conflict. See *Cole v. White*, 180 W. Va. 393, 376 S.E.2d 599 (W. Va. 1988) Accordingly, I respectfully dissent.

In syllabus point two of *Cole*, this Court held clearly and unequivocally that "[w]here a constitutional right to counsel exists under W. Va. Const. art. III, § 14, there is a correlative right to representation that is free from conflicts of interest." 180 W. Va. at 394, 376 S.E.2d at 600, Syl. Pt. 2. We further explained, in *State ex rel. Yurish v. Faircloth*, 243 W. Va. 537, 847 S.E.2d 810 (2020), that with respect to an accused's right to conflict-free representation, "[a] criminal defendant's 'right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." *Id*. at 543, 847 S.E.2d at 816 (citing *U.S. v. Cronic*, 466 U.S. 648, 658 (1984)). The vast majority of jurisdictions – indeed, all of them, whether they rest their decisions on the Fourth Amendment, the Fourteenth Amendment, or their own state constitutions – agree with this essential principle of law. *See*, *e.g.*, *State v. Duffy*, 486 P.3d 197, 202 (Ariz. 2021) ("The Sixth Amendment guarantees an accused the right to assistance of counsel in all criminal proceedings. U.S. Const. amend. VI. Among counsel's 'basic duties' is 'to avoid conflicts of interest.'") (citations omitted); *Hall v. Jackson*, 854 S.E.2d 539, 545 (Ga. 2021) ("Jackson need not show actual prejudice, that is, a reasonable probability that the outcome of his motion for new trial or direct appeal would have been more favorable to him if Fleischman had not labored under a conflict of interest. Instead, prejudice is presumed if Jackson 'demonstrate[s] that the conflict of interest existed and

that it 'significantly affected [Fleischman's] performance.'") (citations omitted); *West v. People*, 341 P.3d 520, 525-26 (Colo. 2015) ("Because of the crucial role of impartial and zealous counsel in securing due process, the right to effective assistance of counsel includes the right to conflict-free counsel. . . . 'That a person who happens to be a lawyer is present at trial alongside the accused ... is not enough to satisfy the constitutional command.'") (citations omitted); *State v. Galaviz*, 291 P.3d 62, 68-69 (Kan. 2012) ("a Kansas criminal defendant has a constitutional right to effective assistance of counsel in a probation revocation proceeding under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. This right includes the right to conflict-free counsel. Even though the source of this right is not the Sixth Amendment to the United States Constitution, cases applying the effective assistance of counsel guarantee of the Sixth Amendment can be used to analyze Fourteenth Amendment ineffective assistance of counsel claims because the governing principles and policies are coextensive."); *State v. Patterson*, 796 N.W.2d 516, 523 (Minn. Ct. App. 2011), *aff'd*, 812 N.W.2d 106 (Minn. 2012) (even where defendant waives a conflict of interest, "in cases involving successive representation, disqualification may be required if the defense lawyer previously represented a state's witness by assisting that witness in presenting testimony before a tribunal investigating the subject matter of the current criminal charges against the defendant, and the defense lawyer's obligation to the defendant at trial requires the lawyer to discredit the state's witness's trial testimony that is substantially related to the witness's former testimony.").

In its simplest formulation, "'[c]onflict-free representation' means 'assistance by an attorney whose allegiance to his client is not diluted by conflicting interests or inconsistent obligations.'" *People v. Rhodes*, 165 N.E.3d 556, 560 (Ill. App. Ct. 2020) (citation omitted). Such allegiance to an attorney's client – and the zealous advocacy to which the client is entitled – is consistent with our "institutional interest in protecting the truth-seeking function of the proceedings . . . the institutional legitimacy of judicial proceedings . . . [and] a concern to shield a defendant from having his defense compromised by an attorney with divided loyalties." *State ex rel. Michael A.P. v. Miller*, 207 W. Va. 114, 120, 529 S.E.2d 354, 360 (2000).

In the instant case, it is beyond dispute that the petitioner's counsel had an actual conflict of interest arising from her firm's prior representation of one of the State's key witnesses,[2] K.S., inasmuch as counsel had accessed confidential information from

---

[2] Although the State had other witnesses, it is fair to characterize K.S. as a key witness. No other testimony at trial could have been more prejudicial than K.S.'s emotional description of finding the petitioner passed out on her bed, unresponsive, lying on top of her dead baby:

> Q. And would you just tell the jury what happened on that day that [baby G.B.] died? What did you see?
>
> A. I walked into the room where they all lived and I saw [A.B.] on top of [G.B.] and she was not alive.
>
> Q. Here's some tissue, right here.
>
>  Could you see any part of [G.B.]?
>
> A. Yeah, I could see her arm.

K.S.'s file that had significant impeachment value. Thus, there was nothing "theoretical or speculative" about counsel's conflict of interest that would require her to prove its existence,[3] *let alone prove it by disclosing the confidential information and detailing exactly how it would be used to impeach the witness* – a truly startling proposition – as the State demanded. Further, as noted by the Bar Office of Disciplinary Counsel when defense counsel consulted lawyer disciplinary counsel about the matter, the conflict was not

---

Q. And tell the jurors, what did you do when you saw that?

A. I touched her arm and I tried to see if she was moving or breathing and she wasn't, so I called the police and tried to call an ambulance.

Q. And did you try to get the baby, [G.B.], out from under [A.B.]?

A. Yes, but I couldn't.

Q. And did you try to wake [A.B.] up so she'd move?

A. Yeah.

Q. How did you try to do that?

A. I just touched her and I said, "[A.B.], get up, please," and she wouldn't wake up.

[3] *See* Syl. Pt. 3, in part, *State ex rel. Postelwaite v. Bechtold*, 158 W. Va. 479, 212 S.E.2d 69 (1975), *cert. denied*, 424 U.S. 909 (1976) (holding, in part, that "one who claims ineffective assistance of counsel by reason of conflict of interest . . . must demonstrate that the conflict is actual and not merely theoretical or speculative.") (emphasis added).

waivable because K.S., who had formerly been represented by defense counsel's office, was a juvenile.[4]

Succinctly stated, where an attorney represents to a court that he or she has an actual conflict of interest, the court must allow the attorney to withdraw from the representation; anything less is unfair to the attorney's client, whose right to a fair trial is at stake. Significantly, in this regard, the vast majority of our precedents which suggest that the existence of a conflict must be proved are wholly inapposite to the instant case because they involve an attempt to disqualify an *opponent's* counsel. *See*, *e.g.*, *Yurish,* 243 W. Va. at 539, 847 S.E.2d at 812 (State's attempt to disqualify defense counsel); *State ex rel. Verizon W.Va., Inc. v. Matish*, 230 W. Va. 489, 740 S.E.2d 84 (2013) (defense counsel's attempt to disqualify plaintiff's counsel); *State ex rel. Blake v. Hatcher*, 218 W. Va. 407, 624 S.E.2d 844 (2005) (same); *State ex rel. Youngblood v. Sanders*, 212 W. Va. 885, 575 S.E.2d 864 (2002) (same); *Michael A.P.*, 207 W. Va. at 116, 529 S.E.2d at 357 (prosecutor's attempt to disqualify juvenile's counsel); *Garlow v. Zakaib*, 186 W. Va. 457, 413 S.E.2d 112 (1991) (defense counsel's attempt to disqualify plaintiff's counsel). In such a situation, I agree that one side should not be permitted to gain a tactical advantage by

---

[4] This Court has cautioned that "[j]uveniles, who are necessarily of tender years and limited experience, may be unable to fully understand all the implications of, and the consequences that may flow from, such a waiver." *Michael A.P.,* 207 W. Va. at 121, 529 S.E.2d at 361. In an attempt to sidestep *Michael A.P.*, the State represented that K.S.'s legal guardian would waive the conflict on her behalf; however, inasmuch as the K.S.'s guardian was the victim's grandmother and was herself another key witness against the petitioner, any attempt by her to waive the conflict of interest on behalf of K.S. would certainly be subject to challenge.

"taking out" the other side's lawyer – a lawyer whose client has specifically chosen him or her as counsel – without proof that removal of the lawyer is required under the West Virginia Rules of Professional Conduct.

There are also cases in which a disgruntled litigant alleges, after the fact, that his or her counsel had a conflict of interest and accordingly a new trial is warranted. *See, e.g., State v. Jako*, 245 W. Va. 625, 638-39, 862 S.E.2d 474, 487-88 (2021) (recognizing that a criminal defendant has a right to representation free from conflict of interest but finding that the record was insufficient to determine whether defense counsel in fact had a conflict); *Postelwaite*, 158 W. Va. at 489, 212 S.E.2d at 75 ("the evidence in this case, we believe, clearly indicates a decisive and informed choice to unify the defense against the prosecution along the defense lines of credibility and veracity, giving no quarter to admission, defection, or consortium. Under such circumstances, therefore, it is difficult if not impossible to perceive how, other than by conjecture or surmise, defense counsel, by the dual representation, slighted the defense of one defendant in favor of the other."). Again, I agree that where a litigant seeks to overturn a judgment on the ground – belatedly asserted – that his or her counsel had a conflict of interest, it is entirely reasonable to require that the existence of the conflict be proved.

In this case, however, no one was trying to gain a strategic advantage by claiming that someone else's lawyer, or a lawyer who had committed the cardinal sin of losing at trial, had a conflict of interest. Here, defense counsel consulted the ethics rules,

consulted lawyer disciplinary counsel, and determined that she had a conflict of interest which ethically required her to withdraw from the representation of her client. The State's demand (to which the circuit court acquiesced) that she prove the existence of the conflict impugned her integrity and demeaned her status as an officer of the court. Further, the State's demand that counsel disclose exactly what confidential information she had accessed from K.S.'s file and exactly how she planned to use it at trial compounded her ethical dilemma in that

> Rule 1.9(b)[5] of the West Virginia Rules of Professional Conduct has three primary objectives: (1) to safeguard the sanctity of the attorney-client relationship and the confidential information that is shared by a client during the course of an attorney-client relationship; (2) to protect from disclosure the confidential information revealed by a client to his/her attorney during the course of an attorney-client relationship; and (3) to prohibit an attorney from using such confidential information adversely to his/her former client.

*Verizon*, 230 W. Va. at 491, 740 S.E.2d at 87, Syl. Pt. 4 (footnote added). The State's demand put defense counsel in a double bind: requiring her to disclose confidential information in K.S.'s file would breach her ethical duties to her firm's former client, K.S.,

---

[5] Rule 1.9(b) of the West Virginia Rules of Professional Conduct provides that

> [a] lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter: (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known.

and requiring her to lay out her trial strategy in advance would harm the interests of the firm's current client, the petitioner.[6]

This Court's opinion in *State v. Rogers*, 231 W. Va. 205, 744 S.E.2d 315 (2013), which at first blush appears to present the same fact pattern as that in the instant case, is materially distinguishable. In *Rogers*, defense counsel, a public defender, discovered a few weeks before trial that several witnesses in his case were former clients of his office. His managing attorneys instructed him to file a motion to withdraw, which he did; however, he

> stated to the trial court that he had not represented any of the potential witnesses involved in the Petitioner's case. The attorney also told the court that he had not accessed any confidential information involving any of the public defender's prior clients at issue in the motion. Further, the attorney informed the trial court that the extent of what he would use in cross-examination of [a prior client] would be what was part of the public record, i.e., complaints and criminal records.

---

[6] It is a troublesome fact that when defense counsel was presented with these demands, she acquiesced without making any real attempt to argue her position. In similar vein, when the State contended that none of the information contained in K.S.'s file would be admissible to impeach her – a shaky proposition at best, and one certainly worthy of argument at the least – defense counsel again meekly acquiesced. Finally, when the State demanded that defense counsel submit all proposed questions to the circuit court prior to her cross-examination of K.S., defense counsel gave up any pretense of a fight; she asked K.S. the one single question the State deemed permissible – 'were you under the influence of drugs or alcohol on the day the baby died,' to which K.S. responded in the negative – clarified that K.S. hadn't been under the influence the previous day either, and then sat down.

*Id*. at 213, 744 S.E.2d at 323. In short, the attorney moved to withdraw because he believed that the motion was required, but he clearly believed that what he had was the appearance or the possibility of a conflict of interest, not an actual conflict.

On these facts the circuit court denied the motion to withdraw, and this Court affirmed, holding that "before disqualification of counsel can be ordered on grounds of conflict arising from confidences presumably disclosed in the course of discussions . . . the court must satisfy itself from a review of the available evidence, including affidavits and testimony of affected individuals, *that confidential information was in fact discussed*." *Id*. at 214, 744 S.E.2d at 324 (citing *Youngblood*, 212 W. Va. at 886, 575 S.E.2d at 865, Syl. Pt. 3, in part). Here, in contrast, defense counsel informed the circuit court that she had accessed confidential information in K.S.'s file which could be used to impeach her testimony. Therefore, there was no need for any additional proof that a conflict of interest existed; the salient facts were made known to the court by counsel and were more than sufficient to require that her motion to withdraw be granted. Although this would have necessitated a delay in the upcoming trial, it cannot be gainsaid that considerations of judicial efficiency do not trump a criminal defendant's right to conflict-free representation.

The majority refuses to redress the violation of the petitioner's rights on the ground that the circuit court's refusal to permit counsel to withdraw from her representation was harmless because counsel's representation of the petitioner did not constitute ineffective assistance under the test established in *Strickland v. Washington*, 466 U.S. 668

(1984),[7] thus effectively overruling this Court's clear directive that "once an actual conflict is found which affects the adequacy of representation, ineffective assistance of counsel is deemed to occur and the defendant need not demonstrate prejudice." *Cole*, 180 W. Va. at 396, 376 S.E.2d at 602 (citing *Cuyler v. Sullivan*, 446 U.S. 335, 349-50 (1980); *see also Blake*, 218 W. Va. at 409, 624 S.E.2d at 846 (disqualification of lawyer for conflict of interest proper "where the conflict is such as clearly to call in question the fair or efficient administration of justice."); *Michael A.P.*, 207 W. Va. at 121, 529 S.E.2d at 361 (disqualification of attorney with a conflict of interest evidences an "institutional interest in protecting the truth-seeking function of the proceedings . . . the institutional legitimacy of judicial proceedings . . . [or] a concern to shield a defendant from having his defense compromised by an attorney with divided loyalties."); *State v. Reedy*, 177 W. Va. 406, 411, 352 S.E.2d 158, 163 (1986) (defense counsel's failure to disclose that he was a relative and friend of the crime victim necessitated grant of new trial because "the situation created by counsel's lack of disclosure defies its quantification, [and] prejudice need not be shown by defendant as a condition to relief. A potential if not actual conflict has been demonstrated and thus the appearance, at least, of impropriety.").

---

[7] The test is whether "(1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694; *accord* Syl. Pt. 5, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995) (adopting the *Strickland* test).

Because the right to have representation that is free from an actual conflict of interest is fundamental and structural to a defendant's right to a fair trial, I would not under any circumstances agree to water down that right by applying a *Strickland* analysis in an effort to "save" a conviction. *See*, *e.g.*, *State v. Duffy*, 453 P.3d 816, 827 (Ariz. Ct. App. 2019), *aff'd*, 486 P.3d 197 (2021) ("The right to conflict-free counsel 'is so important that, unlike with other Sixth Amendment claims, when a defendant alleges an unconstitutional actual conflict of interest, "prejudice must be presumed," and harmless error analysis does not apply.'") (citation omitted); *Beard v. Commonwealth.*, 302 S.W.3d 643, 648 (Ky. 2010) ("Because Appellant's Sixth Amendment right to counsel was denied by the existence of a conflict of interests, and such an error cannot be harmless error, the conviction cannot stand."); *Lee v. State*, 690 So. 2d 664, 668 (Fla. Dist. Ct. App. 1997) ("The assistance of counsel is among those 'constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error.' *Chapman v. California*, 386 U.S 18, 23 & n.8, 87 S.Ct. 824, 827-28 & n.8, 17 L.E.2d 705 (1967)."); *Cole*, 180 W. Va. at 394, 376 S.E.2d at 600, Syl. Pt. 4, in part ("once an actual conflict is found which affects the adequacy of representation, ineffective assistance of counsel is deemed to occur and the defendant need not demonstrate prejudice."). Refusal to apply a harmless error analysis in this situation comports not only with the constitution but also with the common-sense proposition that while in the typical case a reviewing court bases its decision on the record, here the issue is what is *not* in the record – what strategies could have been employed, what witnesses could have been called, what questions could have been asked, had counsel not labored under a conflict of interest.

*See Duffy*, 453 P.3d at 828 ("The central question that we consider in assessing a conflict's adverse effect is 'what the advocate [found] himself compelled to refrain from doing' because of the conflict.") (citation omitted).

Finally, the majority's harmless error analysis is, in effect, the death knell for any subsequent consideration of whether the petitioner received ineffective assistance of counsel, because the majority has already concluded that the petitioner cannot meet the second prong of the *Strickland* test, whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Miller*, 194 W. Va. at 6, 459 S.E.2d at 117, Syl. Pt. 5, in part. Despite the many indications in the record of this case that defense counsel's performance at trial was objectively ineffective,[8] in my view this Court should not attempt to resolve either prong of the *Strickland* test on direct appeal, without the benefit of counsel's testimony as to what she did or didn't do and why. *Miller*, *id*. at 14-15, 459 S.E.2d at 125-26 ("intelligent review is

---

[8] *See supra* note 6. Additionally, although the petitioner's pre-trial motions made mention of possible defenses, the stress of poverty and/or post-partum depression, defense counsel offered no evidence at trial to support these defenses and was therefore not permitted to argue them to the jury. At trial, counsel led off with a "shadow opening," simply asking the jury to keep an open mind because the petitioner was entitled to a presumption of innocence. She asked only two questions of the key witness, K.S., and very few questions of the other witnesses – and those few questions did nothing but give the witnesses an opportunity to reiterate the inculpatory testimony they had given on direct examination. Counsel called only one witness in her case in chief, the petitioner's husband, who gave brief testimony that did not suggest even the glimmer of a defense for the petitioner and was then subject to lengthy, withering cross-examination about the myriad inconsistent statements he had previously given to authorities.

rendered impossible because the most significant witness, the trial attorney, has not been given the opportunity to explain the motive and reason behind his or her trial behavior."). In this case, one reading the trial transcript could easily conclude – as the majority has done – that the evidence against the petitioner was overwhelming and that she had no defense. What we don't know, and cannot know on the state of this record, is what evidence may have been available if the petitioner's counsel had not been precluded from using it by virtue of her conflict of interest, or what defense may have been raised but was not for the same – or another – reason.

In similar vein, it is impossible to determine on direct appeal the effect of what appears to be a *Brady*[9] violation in this case: the State's failure to turn over records of witness K.S.'s mental health examination and psychiatric commitment, and/or records regarding an abuse and neglect proceeding. In this regard, I reject any inference which may be drawn from the majority's reference to the State's "open file policy" that a prosecutor's failure to disclose favorable evidence could be excused by the existence of such a policy; indeed, we have specifically ruled to the contrary. *See State v. Kennedy*, 205 W. Va. 224, 232, 517 S.E.2d 457, 465 (1999), *overruled on other grounds by State v. Mechling*, 219 W. Va. 366, 633 S.E.2d 311 (2006); *State v. Hall*, 174 W. Va. 787, 791, 329 S.E.2d 860, 863 (1985). Additionally, I reject any inference that the State's failure to turn over the records was a "no harm, no foul" violation because the defense already had them; this is not entirely

---

[9] *Brady v. Maryland*, 373 U.S. 83 (1963).

clear from the appendix record, and the facts need to be developed in post-conviction proceedings. Finally, I reject the State's unsupported assertion at trial that the records would not have been admissible to impeach K.S. anyway – a sweeping pronouncement defense counsel meekly accepted without argument, *see supra* note 6 – as again, this cannot be determined from the appendix record.

We have held that

> [t]here are three components of a constitutional due process violation under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *State v. Hatfield,* 169 W.Va. 191, 286 S.E.2d 402 (1982): (1) the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must have been material, i.e., it must have prejudiced the defense at trial.

*Buffey v. Ballard*, 236 W. Va. 509, 516, 782 S.E.2d 204, 211 (2015) (citing *Youngblood*, 221 W. Va. at 22, 650 S.E.2d at 121, Syl. Pt. 2). In the instant case, the majority finds it unnecessary to even consider the first two prongs of the test because it concludes, in a cursory analysis, that suppression of the evidence was immaterial in that "[e]ven if A.B. had the records to cross-examine K.S., and that cross-examination caused the jury to doubt the reliability of K.S.'s testimony, such doubt would not have affected the jury's verdict because of the overwhelming evidence of A.B.'s guilt as to all three counts."

In light of the procedural posture of this case, I cannot agree. Because defense counsel simply acceded to the State's position that all of K.S.'s records were confidential

and thus inadmissible, counsel didn't ask the circuit court to review the records or otherwise make any rulings with respect to them. Thus, the issue before this Court was never squarely presented to the circuit court as a *Brady* issue, was never presented to the court as an evidentiary issue, and is so integrally connected to a claim of ineffective assistance of counsel that it should be litigated in habeas corpus proceedings, not decided on plain error review.

For these reasons, I respectfully dissent. I am authorized to state that Chief Justice Hutchison joins in this dissenting opinion.