# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**January 2013 Term**

**FILED**

**March 7, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**No. 12-1209**

---

**STATE OF WEST VIRGINIA EX REL. VERIZON WEST VIRGINIA, INC.;
ANDREA L. CUSTIS; VICTORIA L. BOSTON; ROBERT ANDERSON;
JUDY ISNER; MARY FREDERICK; DAWN WATSON;
BARBARA TERWILLIGER; AND JODI DENNIS,**
Petitioners

**V.**

**HONORABLE JAMES A. MATISH,
JUDGE OF THE CIRCUIT COURT OF HARRISON COUNTY;
STEPHANIE SNOW-MCKISIC; RITA L. KNIGHT;
DANNY KNIGHT, SR.; DAVID MICHAEL BROSIUS;
DANNY KNIGHT, JR.; SARAH KNIGHT; RYAN P. BARKER;
LYNET WHITE; KIMBERLY A. RAY; JEFFREY L. RAY;
LISA M. THARP; TRAVIS N. THARP, AND
CHARLES R. BYARD,**
Respondents

---

Petition for a Writ of Prohibition

WRIT DENIED

---

Submitted: February 5, 2013
Filed: March 7, 2013

Richard W. Gallagher
E. Ryan Kennedy
Robinson & McElwee, PLLC
Clarksburg, West Virginia
Thomas E. Spahn, *Pro Hac Vice*
McGuireWoods LLP
Tysons Corner, Virginia
Jonathan P. Harmon, *Pro Hac Vice*
Tennille J. Checkovich, *Pro Hac Vice*
McGuireWoods LLP
Richmond, Virginia
Attorneys for the Petitioners

G. Thomas Smith
Smith, McMunn & Glover PLLC
Clarksburg, West Virginia
Attorney for Corby Miller,
Co-Defendant Employer Below

Larry J. Rector
Amy M. Smith
Steptoe & Johnson PLLC
Bridgeport, West Virginia
Attorneys for the Respondents,
Plaintiff Employees Below

**JUSTICE DAVIS delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1. "A party aggrieved by a lower court's decision on a motion to disqualify an attorney may properly challenge the lower court's decision by way of a petition for a writ of prohibition." Syllabus point 1, *State ex rel. Bluestone Coal Corp. v. Mazzone*, 226 W. Va. 148, 697 S.E.2d 740 (2010).

2. "A circuit court, upon motion of a party, by its inherent power to do what is reasonably necessary for the administration of justice, may disqualify a lawyer from a case because the lawyer's representation in the case presents a conflict of interest where the conflict is such as clearly to call in question the fair or efficient administration of justice. Such motion should be viewed with extreme caution because of the interference with the lawyer-client relationship." Syllabus point 1, *Garlow v. Zakaib*, 186 W. Va. 457, 413 S.E.2d 112 (1991).

3. Pursuant to Rule 1.7(b) of the West Virginia Rules of Professional Conduct, a lawyer may represent a client even though there appears to be a conflict between the interests of the client and the lawyer him/herself if the lawyer reasonably believes that his/her representation will not be affected thereby and if the client, who has been informed of the conflict, agrees to continued representation.

4. Rule 1.9(b) of the West Virginia Rules of Professional Conduct has three primary objectives: (1) to safeguard the sanctity of the attorney-client relationship and the confidential information that is shared by a client during the course of an attorney-client relationship; (2) to protect from disclosure the confidential information revealed by a client to his/her attorney during the course of an attorney-client relationship; and (3) to prohibit an attorney from using such confidential information adversely to his/her former client.

5. Pursuant to Rule 5.6 of the West Virginia Rules of Professional Conduct, a protective order or confidential settlement agreement may not be construed or enforced to preclude an attorney from representing a client in a subsequent matter involving similar facts and/or parties based solely upon the attorney's obligations to maintain the confidentiality of information subject to such protective order or confidential settlement agreement.

**Davis, Justice:**

The petitioners herein, Verizon West Virginia, Inc., and various of its employees (hereinafter collectively "Verizon"),[1] request this Court to issue a writ of prohibition to prevent the Circuit Court of Harrison County from enforcing its August 24, 2012, and October 1, 2012, orders. By the August order, the circuit court permitted Steptoe & Johnson PLLC (hereinafter "Steptoe"), counsel for the individual respondents herein,[2] to continue in its representation of the Plaintiff Employees in their wrongful termination cases against Verizon. In its October order, the circuit court refused Verizon's motion for clarification and/or reconsideration of its August order. Before this Court, Verizon requests the issuance of a writ of prohibition disqualifying Steptoe as counsel for the Plaintiff Employees based upon Steptoe's prior representation of other former employees of Verizon in substantially related matters that were settled and dismissed. Upon a review of the parties' arguments, the appendix record, and the pertinent authorities, we deny the requested writ of prohibition. In summary, we find that Verizon is not entitled to prohibitory relief because

---

[1]The individual employees referred to in this opinion collectively as "Verizon" are managerial and similarly-positioned employees of Verizon who were named as defendants in the underlying wrongful termination proceedings. An additional defendant from the proceedings below, Corby Miller, has filed a response in the case *sub judice* taking no position as to the propriety of the writ of prohibition requested by Verizon herein.

[2]The individually named respondents are former employees of Verizon who have filed wrongful termination claims against Verizon based upon alleged violations of the West Virginia Human Rights Act, W. Va. Code § 5-11-1 *et seq.* They all have retained attorneys from the Steptoe law firm to represent them in those proceedings. For ease of reference, these respondents will be referred to collectively as the "Plaintiff Employees."

1

Steptoe's successive representation of its former and current clients does not constitute a conflict of interest under either Rule 1.7 or Rule 1.9 of the West Virginia Rules of Professional Conduct. Moreover, the relief requested by Verizon would impermissibly restrict Steptoe's right to practice law in contravention of West Virginia Rule of Professional Conduct 5.6.

# I.

## FACTUAL AND PROCEDURAL HISTORY

The facts underlying this original jurisdiction proceeding are straightforward and not disputed by the parties. In 2009, Steptoe filed a lawsuit (hereinafter "*Rowh*") against Verizon on behalf of a former Verizon employee alleging wrongful termination and violation of the West Virginia Human Rights Act, W. Va. Code § 5-11-1 *et seq.* Thereafter, in 2010, Steptoe filed a similar lawsuit (hereinafter "*Radcliff*") on behalf of another Verizon employee. Both of these individuals had worked at Verizon's call center in Clarksburg, West Virginia.

During the course of the *Rowh* litigation, the parties entered into an agreed protective order to secure the confidentiality of certain documents disclosed in discovery. A similar agreed protective order was entered in the *Radcliff* proceedings, with the additional stipulation that documents produced in *Rowh*, and subject to the protective order therein,

2

nevertheless could also be used in *Radcliff* in an effort to avoid unnecessary costs of duplication. In essence, the protective orders restricted the use of the confidential information subject thereto to the proceedings in which the documents were produced; prohibited their use for other purposes (with the exception of the caveat in *Radcliff*); and, required that, upon the conclusion of the litigation, the documents must be returned to their producer or may be retained as long as their continued confidentiality is ensured. The orders did, however, permit the disclosure of the protected information in response to a court order or as required by operation of law.[3] Although the terms of the protective orders were drafted primarily by Steptoe, it appears that counsel for Verizon also contributed substantially to the language ultimately used.

Both the *Rowh* and *Radcliff* lawsuits were resolved through the entry of confidential settlement agreements. The terms of these agreements prohibited the parties from divulging the nature, substance, or amount of the settlements and further prohibited the plaintiff employees from disparaging Verizon in the future. As with the agreed protective orders, the confidential settlement agreements further permitted the parties to reveal protected information as necessary to comply with a court order or other obligation imposed

---

[3]See Section III.A.2, *infra*, for further treatment of the *Rowh* and *Radcliff* agreed protective orders.

3

by law.[4]  Upon the conclusion of these cases, Steptoe decided to retain the documents safeguarded by the agreed protective orders subject to its continuing duty to maintain their confidentiality and guard against their further use or disclosure.

While the *Radcliff* litigation was concluding, Steptoe filed lawsuits on behalf of nine other former Verizon employees, the Plaintiff Employees herein, who also had worked at its Clarksburg call center, alleging that Verizon had engaged in employment discrimination against them based upon their disabilities or perceived disabilities.  Steptoe additionally filed two class action lawsuits alleging the same claims.  Thereafter, the circuit court consolidated all of these cases.  During the beginning stages of the current lawsuits, Mr. Rector, a Steptoe attorney who had represented the plaintiffs in the two prior, settled cases against Verizon, indicated that he might use some of the documents produced in discovery in the *Rowh* proceedings in the current cases.  It appears that Mr. Rector believed that the parties would enter an agreed protective order in the current lawsuits similar to the one entered in the *Radcliff* case that had permitted the parties to use the *Rowh* discovery in the *Radcliff* case to avoid the substantial costs of duplication.  Verizon, however, did not agree to the entry of a protective order with provisions similar to those contained in the *Radcliff*

---

[4]For further discussion of the *Rowh* and *Radcliff* confidential settlement agreements, see Section III.A.2, *infra*.

4

order.[5] On September 28, 2011, Verizon moved for Steptoe's disqualification as the Plaintiff Employees' counsel based upon Mr. Rector's stated intention to use the *Rowh* discovery documents in his representation of the Plaintiff Employees and his additional indication that he might call the former plaintiff employees as witnesses in the current Plaintiff Employees' cases.[6] Steptoe responded to Verizon's motion, attaching an affidavit from attorney Rector in which he vowed that he has not violated any of the confidential provisions of the agreed protective orders or confidential settlement agreements and that he had not planned to use information obtained in the two earlier cases unless and until it is produced in the current cases. Steptoe also attached affidavits to its response from each of the Plaintiff Employees in the current cases in which they stated that they understood that Mr. Rector's representation of them may be limited by his prior representation of the initial two plaintiff employees in the *Rowh* and *Radcliff* cases but that they nevertheless want to continue to be represented by Steptoe.

---

[5]Nevertheless, it appears that the circuit court entered an agreed protective order in the cases *sub judice* on November 14, 2011, and that several documents that had been produced in the prior litigation have been produced again in the current litigation subject to this protective order.

[6]It appears, though, that the parties nevertheless commenced discovery in the new cases and that Mr. Rector referred to Bates numbers of documents he had obtained during the *Rowh* discovery. Without objecting to such references, Verizon responded to said discovery requests, also with Bates number references. Neither party, however, disclosed the contents or substance of the referenced documents.

The circuit court held a hearing on Verizon's disqualification motion. By order entered February 24, 2012, the circuit court held in abeyance its ruling on Verizon's disqualification motion until Steptoe had consulted with the *Rowh* and *Radcliff* plaintiffs and obtained their consent to its continued representation of the Plaintiff Employees. In summary, the circuit court addressed its concerns regarding a potential conflict of interest under Rule 1.7(b) of the West Virginia Rules of Professional Conduct,[7] which prohibits an attorney from representing a client where such representation would be materially limited by the attorney's obligations to a former client. However, the circuit court found Steptoe was not disqualified on this basis because Mr. Rector and the Plaintiff Employees had submitted affidavits allaying these concerns and reflecting the Plaintiff Employees' consent to continuing representation by Steptoe in the current lawsuits.

Next, the circuit court considered Rule 1.9,[8] which requires an attorney wishing to represent a subsequent client in a substantially related matter in which the interests of the former and subsequent clients are materially adverse to consult with and obtain the consent of the former clients before continuing with such representation. Because Steptoe had neither consulted with its former plaintiff employee clients nor obtained their consent to its

---

[7]See Section III.A., *infra*, for the text of Rule 1.7 of the West Virginia Rules of Professional Conduct.

[8]For the text of West Virginia Rule of Professional Conduct 1.9, see *infra* Section III.B.

6

continued representation of the Plaintiff Employees, the circuit court held its ruling on Verizon's motion to disqualify in abeyance for twenty days to permit Steptoe to consult with its former clients and obtain their consent to the continued representation.

Finally, the circuit court contemplated Steptoe's argument that disqualifying it from representing the Plaintiff Employees would violate Rule 5.6(b)[9] and expressed its concern that granting Verizon's disqualification motion might infringe upon attorney Rector's right to practice law.

Steptoe thereafter filed a motion requesting the circuit court to reconsider its rulings. However, Steptoe did not obtain or file consents from its two former clients as directed by the circuit court in its February 24, 2012, order. By order entered August 14, 2012, the circuit court granted Verizon's motion to disqualify Steptoe as the Plaintiff Employees' counsel based upon Steptoe's failure to obtain its former clients' consent to its continued representation of the Plaintiff Employees. In its order, the circuit court granted Steptoe an additional ten days within which to obtain such consents in order to avoid disqualification. On August 20, 2012, Steptoe filed consents from its two former clients agreeing to Steptoe's representation of the current Plaintiff Employees. As a result, the

[9]See Section III.C., *infra*, for the text of Rule 5.6 of the West Virginia Rules of Professional Conduct.

7

circuit court, by order entered August 24, 2012, denied Verizon's motion to disqualify Steptoe as counsel for the Plaintiff Employees. Verizon then filed a motion requesting the circuit court to clarify or reconsider its ruling, which motion the circuit court denied by order entered October 1, 2012. From these adverse rulings, Verizon now seeks a writ of prohibition from this Court.

## II.

## STANDARD FOR ISSUANCE OF WRIT

Verizon requests this Court to issue a writ of prohibition to prevent the Circuit Court of Harrison County from enforcing its August 24, 2012, order permitting Steptoe to continue its representation of the Plaintiff Employees. We previously have held that "[a] party aggrieved by a lower court's decision on a motion to disqualify an attorney may properly challenge the lower court's decision by way of a petition for a writ of prohibition." Syl. pt. 1, *State ex rel. Bluestone Coal Corp. v. Mazzone*, 226 W. Va. 148, 697 S.E.2d 740 (2010). Nevertheless, prohibition remains an extraordinary remedy, and "[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. *W. Va. Code* 53-1-1." Syl. pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977). The following factors guide our consideration of the propriety of prohibitory relief in a particular case:

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996). With these guidelines in mind, we will consider whether Verizon is entitled to the writ of prohibition it has requested from this Court.

## III.

## DISCUSSION

In the underlying proceedings, the circuit court denied Verizon's motion to disqualify Steptoe from representing its current clients, the Plaintiff Employees, in their pending wrongful termination case despite Steptoe's prior representation of former clients who alleged the same claims against the same employer, Verizon. We previously have held that

9

> [a] circuit court, upon motion of a party, by its inherent power to do what is reasonably necessary for the administration of justice, may disqualify a lawyer from a case because the lawyer's representation in the case presents a conflict of interest where the conflict is such as clearly to call in question the fair or efficient administration of justice. Such motion should be viewed with extreme caution because of the interference with the lawyer-client relationship.

Syl. pt. 1, *Garlow v. Zakaib*, 186 W. Va. 457, 413 S.E.2d 112 (1991). In denying Verizon's motion to disqualify Steptoe, the circuit court found that Steptoe's representation of its former and current clients did not present a conflict of interest under either Rule 1.7 or 1.9 of the West Virginia Rules of Professional Conduct where both the former and current clients consented, after consultation, to Steptoe's continued representation of its current clients, the Plaintiff Employees. The circuit court also expressed concern that the disqualification of Steptoe would constitute an impermissible restriction on the right to practice law in contravention of West Virginia Rule of Professional Conduct 5.6. We will examine each of these rules to determine whether Verizon is entitled to the writ of prohibition it has requested in this case.[10]

---

[10]We would be remiss if we did not note that, following oral argument of this case, Steptoe counsel for the Plaintiff Employees moved to file a supplemental brief in response to the Court's inquiry as to why Steptoe had not sought extraordinary relief from this Court when first faced with Verizon's motion to disqualify Steptoe. The supplemental brief explains that Steptoe felt the need to develop a full record before presenting the matter to this Court and relies upon Syllabus point 5 of *Garlow v. Zakaib*, 186 W. Va. 457, 413 S.E.2d 112 (1991), wherein this Court did, in fact, request that a full record be developed in attorney disqualification matters. *See* Syl. pt. 5, *Garlow v. Zakaib*, 186 W. Va. 457, 413 S.E.2d 112 (1991) ("Before a circuit court disqualifies a lawyer in a case because the
(continued...)

### A. *Rule 1.7*

Rule 1.7 of the West Virginia Rules of Professional Conduct addresses general rules regarding conflict of interest. In its entirety, Rule 1.7 provides:

> (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
>
> (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
>
> (2) each client consents after consultation.
>
> (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
>
> (1) the lawyer reasonably believes the representation will not be adversely affected; and
>
> (2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

W. Va. R. Prof'l Conduct 1.7.

---

[10](...continued) lawyer's representation may conflict with the *Rules of Professional Conduct*, a record must be made so that the circuit court may determine whether disqualification is proper. Furthermore, this Court will not review a circuit court's order disqualifying a lawyer unless the circuit court's order is based upon an adequately developed record. In the alternative, if the circuit court's order disqualifying a lawyer is based upon an inadequately developed record, this Court, under appropriate circumstances, may remand a case to the circuit court for development of an adequate record."). We appreciate counsel's candor and thoroughness in responding to this Court's inquiry.

**1. Rule 1.7(a).** Verizon does not contend that Steptoe's representation of its current clients herein violates Rule 1.7(a) and, indeed, we find that Rule 1.7(a) does not apply to the facts of the case *sub judice* because Steptoe's representation of its current clients is not "directly adverse" to its representation of its former clients. W. Va. R. Prof'l Conduct 1.7(a). Rather, the interests of both Steptoe's former and current clients are aligned insofar as they all are former employees of the same employer and they all have alleged the same wrongful termination claims against that employer. "By definition, no violation of Rule 1.7(a) can occur if representation of one client will not be directly adverse to another client." *Committee on Legal Ethics v. Frame*, 189 W. Va. 641, 643, 433 S.E.2d 579, 581 (1993). Because Steptoe is not acting as an "advocate against" its former clients in representing the Plaintiff Employees, this subsequent representation is not adverse, and Rule 1.7(a), by its own terms, does not apply to the facts of this case. *See Frame*, 189 W. Va. at 643, 433 S.E.2d at 581 (observing that, "[w]ith regard to the interpretation of the phrase 'directly adverse,' the comment to Rule 1.7(a) provides the following guidance: 'Thus, a lawyer ordinarily may not act as advocate against a person the lawyer represents in some other matter, even if it is wholly unrelated. Paragraph (a) applies only when the representation of one client would be directly adverse to the other.'" (quoting W. Va. R. Prof'l Conduct 1.7 cmt. *Loyalty to a Client*)).

12

**2. Rule 1.7(b).** Rather, the crux of Verizon's complaint in this regard is that Steptoe's representation of its current clients constitutes a conflict of interest under Rule 1.7(b). More specifically, Verizon opines that Steptoe's representation of its current clients will be compromised by its obligations to its former clients, particularly Steptoe's duty to maintain the confidentiality of information subject to the agreed protective orders and confidential settlement agreements entered in the *Rowh* and *Radcliff* cases. For its part, Steptoe denies that a conflict exists under Rule 1.7(b) and further asserts that it has not revealed any of the information subject to the orders or agreements in the prior cases and that it does not intend to improperly use such information in the instant proceedings. Moreover, Steptoe represents that it will use only information and documents that is obtains through discovery in the case *sub judice*. Applying the language of Rule 1.7(b) to the facts of this case, we conclude that no conflict of interest exists that would require Steptoe's disqualification on this basis.

Pursuant to the express language of West Virginia Rule of Professional Conduct 1.7(b), a lawyer is prohibited from representing a client if such representation "may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests . . . ." W. Va. R. Prof'l Conduct 1.7(b). We previously have interpreted this rule and now hold it to mean that, pursuant to Rule 1.7(b) of the West Virginia Rules of Professional Conduct,

> a lawyer may represent a client even though there appears to be
> a conflict between the interests of the client and the lawyer
> him/herself if the lawyer reasonably believes that his/her

13

representation will not be affected thereby and if the client, who has been informed of the conflict, agrees to continued representation.

*Lawyer Disciplinary Bd. v. Artimez*, 208 W. Va. 288, 300, 540 S.E.2d 156, 168 (2000) (citing W. Va. R. Prof'l Conduct 1.7(b)). We also have construed this rule as cautioning that "[a]n attorney should 'not be permitted to put himself in a position where, even unconsciously, he will be tempted to "soft pedal" his zeal in furthering the interests of one client in order to avoid an obvious clash with those of another.'" *Barefield v. DPIC Cos., Inc.*, 215 W. Va. 544, 557, 600 S.E.2d 256, 269 (2004) (quoting *Committee on Legal Ethics v. Frame*, 189 W. Va. 641, 645, 433 S.E.2d 579, 583 (1993) (citation omitted)). Nevertheless, we do not find that, based upon the facts presently before us, a disqualifying conflict of interest exists that must be cured because there is no material limitation upon Steptoe's representation of its current clients, the Plaintiff Employees, resulting either from Steptoe's loyalty to its former clients or its obligations arising from such representation. W. Va. R. Prof'l Conduct 1.7(b). Nor, as we noted in the preceding section, is there an "obvious clash" between the interests of Steptoe's former and current clients. *Barefield*, 215 W. Va. at 557, 600 S.E.2d at 269 (internal quotations and citations omitted).

At issue are the obligations imposed upon Steptoe by the agreed protective orders and confidential settlement agreements entered in the *Rowh* and *Radcliff* cases. However, Verizon has not demonstrated that Steptoe has violated either of these provisions, and the terms of these documents simply do not restrict Steptoe's representation of subsequent clients in substantially related matters. Neither do they prohibit Steptoe, in the

14

current litigation, from requesting the same information through discovery that Verizon disclosed in the prior cases or from obtaining a new protective order to protect this information once it has been disclosed within the confines of the case *sub judice*. Moreover, to the extent that Verizon has expressed concern that Steptoe may call its former clients as witnesses in support of its current clients' claims, such concern is unfounded. Both of the confidential settlement agreements entered into in the underlying proceedings expressly permit the employee to disclose the terms thereof "to the extent that she . . . has been subpoenaed or otherwise ordered to make such disclosure by a Court . . ." or "as compelled by law or Court Order."

In summary, we conclude that neither Steptoe's representation of its former clients nor its agreement to be bound by the protective orders and confidential settlements entered in conjunction with such representation disqualify Steptoe from representing its current clients, the Plaintiff Employees, in their wrongful termination claims against Verizon.

### *B. Rule 1.9*

West Virginia Rule of Professional Conduct speaks to conflicts of interests involving an attorney's former client. Rule 1.9 states in full that

> [a] lawyer who has formerly represented a client in a matter shall not thereafter:
>
> (a) represent another person in the same or substantially related matter in which that person's interest[s] are materially adverse to the interests of the former client unless the former client consents after consultation; or

15

> (b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6[11] or Rule 3.3[12] would permit or require with respect to a client or when the information has become generally known.

W. Va. R. Prof'l Conduct 1.9 (footnotes added).

**1. Rule 1.9(a).** As to this basis for the issuance of its requested writ, Verizon argues that Steptoe may not represent its current clients herein because the instant proceeding is substantially related to the matter in which Steptoe represented its former clients. Verizon additionally contends that Steptoe should be disqualified because the interests of Steptoe's current clients, the Plaintiff Employees, are materially adverse to those of its former clients. Finally, Verizon asserts that the consents that Steptoe has obtained from its former clients to permit it to continue to represent its current clients are facially defective insofar as, in Verizon's opinion, such consents do not fully disclose the extent to which the former clients, and information pertaining to their cases, might be involved in the litigation of the current clients' claims. Steptoe, however, disputes Verizon's assertions and states that the interests of its former and current clients are aligned, and not adverse, insofar as they are all former employees of the same employer and all have alleged the same claims of wrongful termination against that same employer. Moreover, Steptoe represents that the consents it

[11]Rule 1.6 of the West Virginia Rules of Professional Conduct addresses confidentiality of information. *See generally* W. Va. R. Prof'l Conduct 1.6. This exception is not implicated by the facts of the case *sub judice*. *See* Section III.B.2, *infra*.

[12]West Virginia Rule of Professional Conduct 3.3 concerns candor toward the tribunal. *See generally* W. Va. R. Prof'l Conduct 3.3. This exception is not at issue under the facts of the instant proceeding.

16

obtained from its former clients resulted from full disclosure of the scope of its current representation of the Plaintiff Employees, and, accordingly, the consents are valid.

Rule 1.9(a) of the West Virginia Rules of Professional Conduct precludes an attorney, who previously has represented a client, from representing a subsequent client "in the same or substantially related matter" in which the subsequent client's interests are "materially adverse" to the former client's interests "unless the former client consents after consultation." W. Va. R. Prof'l Conduct 1.9(a). *Accord* Syl. pt. 2, *State ex rel. McClanahan v. Hamilton*, 189 W. Va. 290, 430 S.E.2d 569 (1993) ("Rule 1.9(a) of the Rules of Professional Conduct, precludes an attorney who has formerly represented a client in a matter from representing another person in the same or a substantially related matter that is materially adverse to the interest of the former client unless the former client consents after consultation."). Thus,

> [t]o disqualify an attorney pursuant to Rule 1.9(a) of the West Virginia Rules of Professional Conduct, five criteria must be satisfied: (1) the existence of an attorney-client relationship between the attorney and the former client; (2) the existence of an attorney-client relationship between the attorney and the subsequent client; (3) the subject matter of the subsequent client's representation either is the same as or is substantially related to the subject matter of the former client's representation; (4) the subsequent client's representation is materially adverse to the interests of the former client; and (5) the former client has not consented, after consultation, to the subsequent representation.

Syl. pt. 5, *State ex rel. Bluestone Coal Corp. v. Mazzone*, 226 W. Va. 148, 697 S.E.2d 740 (2010). The facts of the instant case squarely satisfy the first three of these disqualification

17

criteria: attorney representation of a former client, attorney representation of a subsequent client, and both representations involve the same subject matter. *Id.* However, as we noted with respect to our analysis finding no direct adversity between the interests of Steptoe's former and current clients under Rule 1.7(a), in Section III.A.1., *supra*, we likewise conclude that the interests of Steptoe's former and current clients also are not "materially adverse" and, thus, disqualification is not required by Rule 1.9(a).

The Comment to Rule 1.9, itself, explains precisely what the material adversity criterion contemplates: "'The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.'" *Bluestone Coal*, 226 W. Va. 162, 697 S.E.2d at 754 (quoting W. Va. R. Prof'l Conduct 1.9 cmt.). Thus, to constitute "materially adverse" interests under Rule 1.9(a), the interests of an attorney's former and current clients must be so diametrically opposed as to require the attorney to adopt adversarial or opposite positions in the two representations. Clearly, such diversity of interest is not present in this case where both sets of clients have a common background of employment by the same employer at the same employment location and have asserted the same wrongful termination cause of action against that same employer. Rather than changing sides between the former and subsequent clients, Steptoe has remained steadfast in its representation of, loyalty to, and advocacy for parties plaintiff. Where the interests of an attorney's subsequent client are identical to those of the attorney's former client, by definition there simply cannot be material adversity between the two clients' interests. Absent the satisfaction of this element of the Rule 1.9(a)

test, disqualification cannot lie under this rule. Therefore, we deny Verizon's request for a writ of prohibition under Rule 1.9(a) because the factors for disqualifying an attorney thereunder have not been satisfied in this case.

2. **Rule 1.9(b).** Verizon next proposes that disqualification is required under Rule 1.9(b) because Steptoe has indicated an intention to use confidential information that it obtained during its representation of Rowh and Radcliff, and that is protected by the agreed protective orders and/or confidential settlement agreements in those clients' cases, in its representation of its current clients, the Plaintiff Employees. Furthermore, Verizon contends that Steptoe has not provided adequate assurances that it will not improperly use this protected information in the instant proceedings. Steptoe rejects Verizon's inferences and states that it has not, and will not, use the information subject to the agreed protective orders and the confidential settlement agreements in the *Rowh* and *Radcliff* cases in the case *sub judice*. Moreover, Steptoe suggests that the information Verizon attempts to protect by seeking its disqualification under Rule 1.9(b) is not the type of information contemplated thereby. Rather, Steptoe proposes that Rule 1.9(b) preserves and protects information disclosed by a client to his/her attorney that, thus, is privileged and secured by the attorney-client privilege and not information that otherwise would not be confidential were it not for its denomination as such under the agreed protective orders and confidential settlement agreements.

The purpose of Rule 1.9(b) is to preclude an attorney from using information that he/she has obtained while representing a client from later using such information to the former client's detriment. W. Va. R. Prof'l Conduct 1.9(b).

> Information acquired by the lawyer in the course of representing a client may not subsequently be used by the lawyer to the disadvantage of the client. However, the fact that a lawyer has once served a client does not preclude the lawyer from using generally known information about the client when later representing another client.

W. Va. R. Prof'l Conduct 1.9 cmt. Thus, Rule 1.9(b)

> "prohibits lawyers from disclosing or *adversely using* a former client's confidence . . . . The rule is concerned, first and foremost, with insuring that a former client will be protected against . . . the unfair advantage a lawyer could take of her client by using information he communicated in confidence during the course of the earlier representation."

*Bluestone Coal*, 226 W. Va. at 158, 697 S.E.2d at 750 (quoting Richard E. Flamm, *Lawyer Disqualification: Conflicts of Interest and Other Bases* § 7.3, at 126 (2003 & Cum. Supp. 2010) (footnotes omitted)) (emphasis added). In other words, "'[t]he rule concerns itself with the unfair advantage that a lawyer can take of his former client in using *adversely* to that client information communicated in confidence in the course of the representation.'" *State ex rel. Ogden Newspapers, Inc. v. Wilkes*, 198 W. Va. 587, 591 n.9, 482 S.E.2d 204, 208 n.9 (1996) (per curiam) (hereinafter "*Ogden I*") (quoting *Ullrich v. Hearst Corp.*, 809 F. Supp. 229, 236 (S.D.N.Y. 1992)) (emphasis added).

It is apparent, then, and we so hold, that Rule 1.9(b) of the West Virginia Rules of Professional Conduct has three primary objectives: (1) to safeguard the sanctity of the

20

attorney-client relationship and the confidential information that is shared by a client during the course of an attorney-client relationship; (2) to protect from disclosure the confidential information revealed by a client to his/her attorney during the course of an attorney-client relationship; and (3) to prohibit an attorney from using such confidential information adversely to his/her former client. From the record before us, however, we conclude that the facts and circumstances of the case *sub judice* do not warrant the disqualification of Steptoe under the tenets of Rule 1.9(b).

First, the protected information about which Verizon has expressed concern in these proceedings is the information that is secured by the agreed protective orders and confidential settlement agreements entered in the *Rowh* and *Radcliff* cases. Neither of these documents pertains to information that Steptoe's former clients divulged to it during the course of their attorney-client relationship, and, in fact, Verizon is not privy to such information insofar as it is protected by the attorney-client privilege. Rather, the source of Verizon's concern is information that would be public knowledge but for the protections provided by the aforementioned instruments. Because the record does not evince any indication that Steptoe has violated the trust and confidences of its former clients, we do not find a violation of this element of Rule 1.9(b).

Second, the record does not suggest that Steptoe has disclosed the confidential information it obtained during the course of its representation of its former clients, nor that it intends to do so. The only representations Steptoe has made regarding protected

21

information concern those items protected by the agreed protective orders and confidential settlement agreements in the prior cases. And, to that end, Steptoe has averred that it will not use this information in the case *sub judice*. As we previously observed, to the extent the impetus for Verizon's disqualification motion is its fervent desire to safeguard the information already secured by the agreed protective orders and the confidential settlement agreements entered in the prior cases, Rule 1.9(b) does not provide any measure of protection therefor. Rather, should Verizon believe that these former agreements have been breached, its proper remedy would be to seek their enforcement in accordance with their own terms. The protections of Rule 1.9(b) are concerned with information that is obtained within the confines of the attorney-client relationship and not with safeguards that are implemented upon the agreement of litigating parties and ratified by the presiding tribunal.

Finally, assuming, *arguendo*, Steptoe did, or expressed an intention to, divulge information it had received in confidence from *Rowh* and *Radcliff*, it is unlikely that Steptoe would use such information adversely to them insofar as their interests are aligned with the interests of Steptoe's current clients. Having found, however, that Verizon has failed to establish a foundation, under Rule 1.9(b), upon which to base its disqualification motion, we find it unnecessary to further hypothesize as to how, or in what capacity, Steptoe may improperly utilize information that is not at issue in this case.

## C. *Rule 5.6*

Rule 5.6 of the West Virginia Rules of Professional Conduct concerns impermissible restrictions upon an attorney's right to practice law. In its entirety, Rule 5.6 directs:

> A lawyer shall not participate in offering or making:
>
> (a) a partnership or employment agreement that restricts the right of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement; or
>
> (b) an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a controversy between private parties.

W. Va. R. Prof'l Conduct 5.6.

**1. Rule 5.6(a).** Neither Verizon nor Steptoe argues that subsection (a) of Rule 5.6 is implicated in the case *sub judice* and rightfully so: Rule 5.6(a) is wholly inapplicable to the present case because the nature of Steptoe's attorneys' partnership and/or employment agreements is not at issue herein. Rather, the arguments made during the course of these proceedings implicate Rule 5.6(b).

**2. Rule 5.6(b).** During the underlying proceedings, Steptoe suggested that granting Verizon's motion to disqualify would infringe upon its right to practice law under Rule 5.6(b). The circuit court took notice of this contention and expressed its hesitancy to grant Verizon's motion because it did not want to restrict either Steptoe attorney Rector's

right to practice law or infringe upon the rights of the Plaintiff Employees to be represented by counsel of their choosing. Before this Court, Steptoe has renewed its contentions regarding Rule 5.6. We appreciate and share those concerns.

Rule 5.6(b) of the West Virginia Rules of Professional Conduct prohibits restrictions on an attorney's right to practice law: "A lawyer shall not participate in offering or making . . . (b) an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a controversy between private parties." W. Va. R. Prof'l Conduct 5.6(b). The Comment to this rule further explains that "Paragraph (b) prohibits a lawyer from agreeing not to represent other persons in connection with settling a claim on behalf of a client." As with several of the other rules we have considered in our decision of this case, we find Rule 5.6(b), on its face, to be inapplicable to the instant proceeding insofar as the confidential settlement agreements entered into in the *Rowh* and *Radcliff* cases do not, by their express terms, preclude Steptoe from representing the Plaintiff Employees herein.

Nevertheless, we are concerned by the manner in which these confidential settlement agreements have been construed during the course of these proceedings and the arguments that have been advanced by Verizon that would, in effect, interpret these agreements as imposing precisely this type of prohibited restriction. Agreed protective orders have been employed in a myriad of cases in this State, and their use has been approved repeatedly by this Court. *See, e.g.*, Syl. pt. 8, *State ex rel. State Farm Mut. Auto. Ins. Co. v. Marks*, ___ W. Va. ___, ___ S.E.2d ___ (Nos. 12-0304 & 12-0210 Nov. 15, 2012) ("As part

24

of a court's exclusive authority to manage discovery in its tribunal, a court also may enter protective orders to safeguard the confidentiality of materials disclosed in discovery and to regulate the manner in which such information may be used."); Syl. pt. 4, *State ex rel. State Farm Mut. Auto. Ins. Co. v. Bedell*, 228 W. Va. 252, 719 S.E.2d 722 (2011) ("Rule 26(c) of the West Virginia Rules of Civil Procedure requires a showing of good cause to support the issuance of a protective order. The party requesting the protective order bears the burden of demonstrating good cause by establishing particular and specific facts; mere conclusory statements are not sufficient to demonstrate good cause."). Likewise, litigation frequently is resolved and concluded through the entry of confidential settlement agreements, and this Court has expressed its preference that cases be resolved through settlement. *See, e.g.*, Syl. pt. 1, *Sanders v. Roselawn Mem'l Gardens, Inc.*, 152 W. Va. 91, 159 S.E.2d 784 (1968) ("The law favors and encourages the resolution of controversies by contracts of compromise and settlement rather than by litigation; and it is the policy of the law to uphold and enforce such contracts if they are fairly made and are not in contravention of some law or public policy."). While this Court has noted with approval the entry of both agreed protective orders and confidential settlement agreements, it does not follow that the terms of either of these instruments may later be assigned such a tortured and contorted construction as to have them say something that they simply do not and, ethically, cannot vis-à-vis an attorney's right to practice law.

We are gravely concerned that the impetus for the underlying motion to disqualify appears to be the use and existence of agreed protective orders and confidential

25

settlement agreements in the litigation between Verizon and Steptoe's former clients. We are more troubled, however, that these seemingly innocuous documents, whose singular purpose is to attribute confidential status to the information subject thereto and to secure such confidentiality, has, instead been used as a poisoned dart to target Steptoe and to preclude it from representing the clients who have chosen Steptoe's attorneys to represent them. The express terms of Rule 5.6(b) expressly prohibit the inclusion of such restrictive language in any type of settlement agreement between parties. However, were we to adopt Verizon's interpretation of these documents' provisions and condone their use to disqualify Steptoe from representing its current clients, we would undoubtedly be affording a construction to the confidential settlement agreements that most certainly would violate the pronouncements of Rule 5.6(b). Such a result would not have only a chilling effect on the practice of law in this State; it would completely annihilate the practices of any and all attorneys who specialize in any area of the law, from workers' compensation and products liability to insurance litigation and employment discrimination, and all areas of the law in between, in which attorneys who specialize in a particular field represent numerous, different clients. That is not to say that the Rules of Professional Conduct must not be followed. Let us be crystal clear that they must be diligently adhered to in order to maintain the integrity of the legal profession and to protect both clients and the public at large. *See generally* W. Va. R. Prof'l Conduct *Preamble* and *Scope*. Nevertheless, agreed protective orders and confidential settlement agreements simply cannot, and will not, be construed as imposing restrictions upon an attorney's right to practice law in violation of Rule 5.6(b). Accordingly, we hold that, pursuant to Rule 5.6 of the West Virginia Rules of Professional Conduct, a protective

26

order or confidential settlement agreement may not be construed or enforced to preclude an attorney from representing a client in a subsequent matter involving similar facts and/or parties based solely upon the attorney's obligations to maintain the confidentiality of information subject to such protective order or confidential settlement agreement.[13]

---

[13]Our decision of the case *sub judice* is consistent with the decisions of other courts that have, upon similar facts, declined to find that a confidentiality provision in prior litigation precludes an attorney from representing clients in subsequent, similar litigation. For example, in *TradeWinds Airlines, Inc. v. Soros*, No. 08 Civ. 5901(JFK), 2009 WL 1321695 (S.D.N.Y. May 12, 2009), the court concluded that an attorney who had participated in a prior case against the same defendant was not disqualified where she did not use information that was subject to a protective order in the prior case but rather used public information contained in the court's record and opinion in the prior case to prepare pleadings in the subsequent matter. In short, the court ruled that "[t]he Protective Order does not restrict its signatories from engaging in future litigation that would involve overlapping discovery." *Id.* at *7. The court also "decline[d] to interpret a standard confidentiality provision [in the Settlement Agreement] as an implied restriction on counsel's ability to represent other clients, especially as such a restrictive covenant would itself violate ethical rules." *Id.* at *9 (footnote omitted) (citing ABA Model Rule 5.6(b) prohibiting inclusion in a settlement of restrictions upon an attorney's right to practice law).

Similarly, in *Hu-Friedy Manufacturing Co., Inc. v. General Electric Co.*, No. 99 C 0762, 1999 WL 528545 (N.D. Ill. July 19, 1999), the defendant moved to disqualify the plaintiff's counsel because the same counsel had represented another client in litigation against the same defendant in which a protective order and cooperation agreement had been entered. The court rejected the defendant's arguments, concluding that adopting such rationale effectively would "turn[] any protective order barring future use of confidential information that is independently relevant and discoverable in a subsequent action into a restriction on an attorney's right to practice law." *Id.* at *3. Additionally, the court found that such an interpretation of the protective order is contrary to Rule 5.6(b) and disingenuous insofar as "any reasonably competent attorney would routinely obtain [the same information] in discovery" thus affording counsel "no *unfair* advantage in this action due to its previous exposure to the confidential information." *Id.* at *3 (emphasis in original).

Finally, the court in *First Impressions Design and Management, Inc. v. All That Style Interiors, Inc.*, 122 F. Supp. 2d 1352, 1354 (S.D. Fla. 2000), declined to disqualify defense counsel based upon the appearance of impropriety where defense counsel previously had represented the same defendant in a substantially similar matter against the same plaintiff

(continued...)

27

and where an agreed protective order and a confidential settlement agreement had been entered in the prior litigation. Ruling that disqualification was not warranted, the court observed that the plaintiff "could not point to a specifically identifiable impropriety, *i.e.*, any wrongful use of confidential or trade secret information" by defense counsel; that the two prior agreements did not prohibit defense counsel's participation in the instant proceedings; and that "Plaintiff's counsel has not shown that there is a reasonable possibility that there will be a prospective violation of such agreements." *Id.* at 1354 (footnote omitted). *But see Blue Cross & Blue Shield of New Jersey v. Philip Morris, Inc.*, 53 F. Supp. 2d 338 (E.D.N.Y. 1999) (disqualifying counsel based upon appearance of impropriety where counsel had agreed to refrain from representing defendant in instant proceeding in exchange for adverse party's promise not to oppose counsel's representation of other parties in related litigation).

Other courts also have ruled consistently with our decision in this case. *See, e.g.*, *Earnings Performance Grp., Inc. v. Quigley*, 124 Fed. Appx. 350 (6th Cir. 2005) (determining that, if attorney had signed agreement to refrain from representing parties in future litigation against employer, such agreement most likely would not be enforceable under Michigan Rule of Professional Conduct 5.6(b)); *Wolt v. Sherwood*, 828 F. Supp. 1562 (D. Utah 1993) (construing settlement agreement as not precluding settling defendant's counsel from later representing nonsettling defendant against same plaintiff and opining that if settlement agreement contained such a restriction, it would violate Utah Rule of Professional Conduct 5.6(b)); *Life Care Ctrs. of America v. Smith*, 298 Ga. App. 739, 681 S.E.2d 182 (2009) (finding no basis for disqualification of plaintiff's counsel based upon counsel's prior representation of another party plaintiff against same defendant in litigation that was resolved through the entry of a confidential settlement agreement and referencing Georgia Rule of Professional Conduct 5.6(b)). *Accord* Syl., *Jarvis v. Jarvis*, 12 Kan. App. 2d 799, 758 P.2d 244 (1988) ("An agreement which limits the freedom of a party to choose an attorney is void and unenforceable as against public policy."); *Cardillo v. Bloomfield 206 Corp.*, 411 N.J. Super. 574, 576, 988 A.2d 136, 137 (App. Div. 2010) ("Attorneys may not circumvent the import of *RPC* 5.6(b) by stating that the settlement of litigation is separate from the agreement to restrict the practice of law where the agreements were negotiated contemporaneously and are interconnected."). *See also McPhearson v. The Michaels Co.*, 117 Cal. Rptr. 2d 489, ___, 96 Cal. App. 4th 843, 848 (2002) (rejecting court's reasoning in *Gilbert* in concluding that attorney was not disqualified from representing additional employee against same employer, particularly where both former client employee and subsequent client employee waived any potential conflict and confidentiality clause in former client's settlement agreement did not preclude him from testifying as "percipient witness" for subsequent client). *But see Gilbert v. National Corp. for Hous. P'ships*, 84 Cal. Rptr. 2d 204, 71 Cal. App. 4th 1240 (1999) (disqualifying attorney from representing current client employee in litigation against same employer against which attorney had represented former

(continued...)

28

The fact that the instant matter has been presented to us for decision upon these facts and advancing these arguments indicates our need to reiterate our prior cautionary words regarding the filing of disqualification motions:

> We have expressed with concern when a party uses the disqualification rule as a sword in a disqualification proceeding that is designed as a method of harassment and an abusive litigation tactic:
>
> > [D]isqualification, as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary. A disqualification of counsel, while protecting the attorney-client relationship, also serves to destroy a relationship of their own choosing. . . . [S]uch motions should be viewed with extreme caution for they can be misused as techniques of harassment.

*Ogden I*, 198 W. Va. at 591 n.10, 482 S.E.2d at 208 n.10 (quoting *Garlow v. Zakaib*, 186 W. Va. 457, 461, 413 S.E.2d 112, 116 (1991)) (additional citations omitted). "[T]he purpose of the [West Virginia] Rules [of Professional Conduct] can be subverted when they are invoked by opposing parties as procedural weapons." W. Va. R. Prof'l Conduct *Scope*. While cases warranting the disqualification of counsel do arise, the instant matter, simply, is not one of them. Counsel are reminded to faithfully abide by the Rules of Professional Conduct and to refrain from using these ethical guides to engender and perpetuate hostility between adversaries in litigation.

---

[13](...continued)
client employees based upon confidential settlement agreement entered in former clients' case).

29

## IV.

## CONCLUSION

For the foregoing reasons, the requested writ of prohibition is hereby denied.


Writ Denied.