**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 19-0565** (Jackson County 18-F-28)

**Antonio Lee Smith,**
**Defendant Below, Petitioner**

**MEMORANDUM DECISION**

Petitioner Antonio Lee Smith, by counsel Justin M. Collin, appeals the Circuit Court of Jackson County's September 19, 2018, order denying petitioner's post-trial motions following his convictions for wanton endangerment with a firearm or other deadly weapon, felon in possession of a firearm, burglary, and assault. Respondent the State of West Virginia, by counsel Patrick Morrisey and Benjamin F. Yancey III, filed a response to which petitioner submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2017, petitioner was purportedly looking for a woman named Crystal who owed him money. Petitioner drove to what he claims he believed was Crystal's home, but the homeowner, George Baldwin, told petitioner that he did not know Crystal. Petitioner left but later returned, at which time he forced his way into Mr. Baldwin's home at gunpoint and searched the house. Petitioner was later identified as the perpetrator and was arrested.

Petitioner was convicted of wanton endangerment with a firearm or other deadly weapon, felon in possession of a firearm, burglary, and assault following a jury trial in the Circuit Court of Jackson County. Thereafter, petitioner filed a motion for post-verdict judgment of acquittal on the charges of wanton endangerment and felon in possession of a firearm. By order entered on August 29, 2018, the circuit court denied that motion. In that order, the court noted that at the conclusion of the presentation of the State's case, petitioner argued that the State failed to present evidence that the gun used in the commission of the alleged crimes was operational so no reasonable juror could conclude that the evidence presented was sufficient to sustain a conviction. The circuit court denied that motion, and at the conclusion of the trial, the jury deliberated and returned a verdict of

1

guilty on all counts charged in the indictment. After setting forth the relevant legal standards, the circuit court found that, having considered all of the evidence and testimony in the light most favorable to the prosecution and crediting all inferences and credibility assessments the jury might have drawn in favor of the prosecution, sufficient evidence was presented on which the jury could find guilt beyond a reasonable doubt. The court noted, in particular, that "the victim in this case offered substantial testimony based on his first-hand observation of the gun, describing it in detail, and affirming on cross-examination his observation that the gun was what the State claimed it to be." The circuit court, therefore, denied petitioner's motion.

Petitioner then filed a motion for a new trial on August 28, 2018. At the conclusion of the arguments on that motion, petitioner voiced his displeasure with his attorney, Mark Plants, and indicated that he intended to pursue claims of ineffective assistance of counsel.[1] During the hearing, Mr. Plants moved to be relieved as counsel for petitioner based on a breakdown in communication with petitioner such that petitioner would be prejudiced by his continued representation by Mr. Plants. The circuit court took that matter under advisement. The State then moved for a pre-sentence investigation ("PSI"), and that motion was also taken under advisement. According to the circuit court's September 19, 2018, "Order on Post-Trial Motions," prior to the conclusion of the hearing, petitioner orally raised

> various other concerns, which the [c]ourt will construe and address as motions: (1) a motion for post-conviction bond, to which the State noted its objection on the record; (2) a motion for a new prosecutor to represent the State of West Virginia; and (3) a motion for disclosure of various papers in the possession of Mr. Plants.

The circuit court directed Mr. Plants to deliver "all papers in his possession related to case number 18-F-28" to petitioner but took the other motions under advisement. In its resulting order, the circuit court granted the State's motion for a PSI and Mr. Plants's motion to withdraw as counsel. It then appointed new counsel for petitioner for purposes of sentencing in case number 18-F-28.

The circuit court sentenced petitioner to the following terms of incarceration: not less than one nor more than ten years for burglary; five years for wanton endangerment involving a firearm or other deadly weapon; one year for felon in possession of a firearm; and six months for assault. The circuit court ordered that the sentences for wanton endangerment, burglary, and felon in possession of a firearm be served consecutively; however, the assault sentence was to be served concurrent to the felony charges. The circuit court's sentencing order was entered on May 16, 2019.

In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the

---

[1] On November 6, 2019, petitioner filed a motion to stay proceedings in order to request a new trial before the circuit court based upon newly discovered evidence, which was granted by this Court. That evidence was petitioner's discovery that Mr. Plants was an assistant or the elected prosecutor when petitioner was convicted of and sentenced for a drug crime in Kanawha County. According to petitioner's motion, he was convicted in 2007 and sentenced in 2008. The circuit court denied that motion by order entered on May 3, 2021.

circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000). With these standards in mind, we turn to petitioner's two assignments of error: (1) The State presented insufficient evidence that petitioner possessed a firearm capable of expelling a projectile by means of an explosion; and (2) Petitioner's trial counsel, Mr. Plants, was an assistant prosecuting attorney and then the elected prosecuting attorney in Kanawha County. While Mr. Plants was employed as a prosecutor, petitioner was charged with both misdemeanors and felonies, and Mr. Plants failed to inform petitioner of this potential conflict of interest.

As to the sufficiency of the evidence with regard to the firearm, petitioner contends that wanton endangerment and felon in possession of a firearm require proof of a firearm as defined by the Legislature in West Virginia Code § 61-7-2(11).[2] Petitioner asserts that the Legislature chose to narrowly define "firearm" and the State failed to present sufficient evidence, beyond a reasonable doubt, that petitioner possessed a firearm. Therefore, petitioner argues that his convictions for these crimes must be reversed. Petitioner argues that even if the bore of his gun "resembled the bore of a firearm, that does not prove beyond a reasonable doubt that the weapon could expel the projectile by explosion." Without citing any authority, petitioner alleges that by narrowly defining "firearm," the Legislature intended to punish crimes committed with such a lethal weapon more severely than crimes committed with "families of firearms." Petitioner further asserts that committing a felony with a fake gun does not affect probation or parole eligibility and notes that, similarly, wanton endangerment requires proof of a fully functional firearm to justify the increased sentence. Without citing law, petitioner contends that absent such proof, only an assault is committed.[3]

This Court has held that

> [t]he function of an appellate court when reviewing the sufficiency of the

---

[2] Petitioner mistakenly references West Virginia Code § 61-7-2(12), but it appears that he intended to reference West Virginia Code § 61-7-2(11) (2012), which provided: "'Firearm' means any weapon which will expel a projectile by action of an explosion."

[3] We remind petitioner of the mandates of Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, which requires:

> The brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). Additionally, we held that

[a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

*Id.* at 663, 461 S.E.2d at 169, Syl. Pt. 3.

Upon our review of the record, we find that the State presented sufficient evidence at trial showing that petitioner possessed a firearm capable of expelling a projectile by means of an explosion. The State admits that the gun was never recovered, tested, or found to be operational but points to testimony that demonstrated that petitioner used a real gun inside and outside of Mr. Baldwin's home. Mr. Baldwin testified petitioner had the gun pointed at him the entire time inside of his home, agreeing that he got a good look at the gun. Mr. Baldwin described the gun as "an automatic, maybe a 9 mm. I mean, nine inches long or so . . . going by the bore. [] I mean, you know, I don't know exactly what a 9 mm is, but it compared pretty close to a .38 or 30 something caliber." He also specifically stated that it appeared to be made of metal. On cross-examination, petitioner's counsel questioned Mr. Baldwin as to whether it was an actual gun, rather than a BB gun, and Mr. Baldwin responded that "[i]t was a gun. It was a real gun. It wasn't no BB gun. I looked right down the barrel. It was not a BB gun." When pressed on the issue of BB guns that look like real guns, Mr. Baldwin was adamant that it was not possible the gun pointed at him was anything other than a real gun. After hearing Mr. Baldwin's testimony, the testimony of the other witnesses, and being instructed by the trial court, the jury found, beyond a reasonable doubt, that petitioner used a real gun—one capable of firing a real bullet—in carrying out the underlying offenses of wanton endangerment with a firearm and felon in possession of a firearm. Further, petitioner's contention that he did not admit owning a firearm is disingenuous, as petitioner elected not to testify at trial. Thus, we find no merit to petitioner's first assignment of error.

Petitioner's second assignment of error focuses on Mr. Plants's involvement in petitioner's earlier criminal matters and the impact that involvement had in Mr. Plants's representation of petitioner in the underlying Jackson County criminal case. According to petitioner, his trial counsel

failed to inform petitioner of a potential conflict of interest relating to counsel's employment as an assistant prosecutor and then elected prosecutor from at least 2008 until his removal from office in 2014.[4] Petitioner contends that Mr. Plants undertook petitioner's representation while laboring under an actual conflict of interest that adversely affected his performance. He argues that not only did Mr. Plants fail to timely inform petitioner of the potential conflicts, he failed to inform petitioner of the potential conflict at any time so reversal is required.

As this Court has found,

[c]onjecture and surmise will not suffice to brand counsel, appointed or retained, ineffective in the representation of one accused of crime. Conflict of interest precluding effective counsel must be established by the proponent. As was recognized in *United States v. Paz-Sierra*, 367 F.2d 930 (2d Cir. 1966):

"Thus there is no reason to depart from our 'position' with respect to the requirement that conflict of interest must be shown as a foundation for any claim that joint representation was a deprivation of the right to counsel." *Id.*, at 933.

Accord, *United States v. Dardi*, 330 F.2d 316, 335 (2d Cir. 1964); *United States v. Bentvena*, 319 F.2d 916, 937 (2d Cir. 1963); *Gonzales v. United States*, 314 F.2d 750 (9th Cir. 1963). The "conflict" to be established must be actual, and not merely speculative or theoretical. *See United States v. Lovano*, 420 F.2d 769 (2d Cir. 1970), where the rule was stated and applied:

"The rule . . . is that some specific instance of prejudice, some real conflict of interest, resulting from a joint representation must be shown to exist before it can be said that an appellant has been denied the effective assistance of counsel. (Citations omitted)" *Id.*, at 773.

"Appellants have done no more than suggest a theoretical conflict of interest and have pointed to no specific prejudice to their cases." *Id.*, at 774.

*State ex rel. Postelwaite v. Bechtold*, 158 W. Va. 479, 489-90, 212 S.E.2d 69, 75 (1975). Further, "[t]o demonstrate an actual conflict, the defendant must identify specific evidence in the record that suggests that his or her interests were compromised." *State ex rel. Dunlap v. McBride*, 225 W. Va. 192, 203, 691 S.E.2d 183, 194 (2010) (quoting *State v. Larzelere*, 979 So.2d 195, 208 (Fla. 2008)). In addition,

[p]ursuant to Rule 1.7(b) of the West Virginia Rules of Professional

---

[4] In the fact section of his brief, petitioner states that after the verdict and during the appellate process, he discovered that Mr. Plants was an assistant prosecutor when petitioner was convicted of the predicate offense, that Mr. Plants was the elected prosecutor when the Circuit Court of Kanawha County sentenced him to prison on that underlying offense, and that Mr. Plants was the elected prosecutor when petitioner was charged with multiple other misdemeanors and a felony in Kanawha County.

Conduct, a lawyer may represent a client even though there appears to be a conflict between the interests of the client and the lawyer him/herself if the lawyer reasonably believes that his/her representation will not be affected thereby and if the client, who has been informed of the conflict, agrees to continued representation.

Syl. Pt. 3, *State ex rel. Verizon W. Va., Inc. v. Matish*, 230 W. Va. 489, 740 S.E.2d 84 (2013).

On August 7, 2018, petitioner signed a "Waiver of Potential Conflict of Interest," which provided that petitioner, having

been advised by my attorney, Mark Plants, of the existence of a potential conflict of interest that he may have now or in the future due to his previous role as Kanawha County Prosecuting Attorney during which time I was charged with a crime. Mr. Plants has consulted with me and explained the implications of the common representation including the risks and advantages involved. After considering the risks and advantages, I hereby consent to the common representation.

In his post-trial motion, petitioner referenced Kanawha County criminal cases against him with case numbers from 2008 through 2014, during which time Mr. Plants would have been in the prosecutor's office. Prior to trial, the circuit court engaged in a colloquy with Mr. Plants upon the presentation of the waiver, and Mr. Plants stated that he had "not [sic] recollection of the [sic] any of the cases." He also advised the circuit court that he was not directly involved in the prosecution of any of petitioner's cases. According to the circuit court, petitioner then swore under oath that he voluntarily and freely waived the conflict. On appeal, petitioner has not pointed to a single document in the record evidencing Mr. Plants's direct involvement in the prosecution of any of his Kanawha County cases, and he has not alleged that any of his cases were high profile, which might indicate that the elected prosecutor would necessarily be aware of the cases, even if not directly involved. Importantly, petitioner does not allege that there was anything Mr. Plants did or should have done but failed to do that in any way hampered petitioner's defense. Therefore, we find that the circuit court did not err in denying petitioner's post-trial motion on this ground.

Affirmed.

**ISSUED:** October 29, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton